256 A.2d 197.

STATE *vs.* RICHARD I. MOORE.

JULY 28, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J.  The defendant was indicted, and subsequently tried and convicted by a jury, of possession of burglar tools in violation of G. L. 1956, §11-8-7.[1]  The case

---

[1]Section 11-8-7 reads as follows:

"Making, repairing, or possessing burglar tools.—Whoever makes or mends, or does any work connected with the making or reparation of, or has in his possession any engine, machine, tool, false key, pick lock, nippers, or implement of any kind adapted and designed for cutting through,

is before us on the defendant's bill of exceptions wherein he challenges the correctness of certain rulings made during the course of the trial and a certain portion of the trial justice's charge to the jury.

The pertinent facts are as follows. Harold L. Grattage, an assistant manager at a "Benny's, Inc." store in Wakefield testified that on October 26, 1960, defendant, whom he identified in court during the course of the trial, purchased a wrecking bar, a punch, a hammer, a package of flashlight batteries, and a leather carrying bag at the Wakefield store. After the purchase Mr. Grattage put the articles in a paper bag. The approximate amount of the purchase was six dollars and change, which defendant paid for in small silver consisting of quarters, nickels and dimes. Mr. Grattage also gave the following account of what happened when defendant left the store.

He kept defendant within his view after he left the premises and saw him walk to and enter an automobile parked in front of the store. Another man, whom he identified in court as James R. MacKenzie, was in the automobile at the time defendant entered it. MacKenzie got out of the automobile and went into the store where he purchased a chisel which he paid for in quarters, dimes and nickels. After MacKenzie left the store Mr. Grattage kept him in view. MacKenzie went back to the same automobile, a Mercury, bearing a Massachusetts registration plate. Mr. Grattage wrote down the registration number which he gave to the local police at about 7:55 p.m., approximately one half-hour after the two purchases were made.

While being cross-examined by defendant's counsel, Mr.

forcing, breaking open or entering a building, room, vault, safe, or other depository, in order to steal therefrom money or other property, or to commit any other crime, knowing the same to be adapted and designed for the purpose aforesaid, with intent to use or employ, or allow the same to be used or employed, for such purpose, shall be imprisoned not more than ten (10) years."

Grattage stated that all the tools and purchases made by defendant, excepting the leather bag, were put by Mr. Grattage into a paper bag which he saw defendant put in the automobile.

As a result of Mr. Grattage's call the police issued a warning via police radio. Very shortly after 8 p.m., Officer Everett E. Briggs, a local patrolman on duty in a cruiser car, received a call concerning the Mercury. He soon spotted the automobile stopped off the highway behind certain buildings, including an A & P. The car was coming out from behind the A & P. The officer followed the Mercury for a while and then lost sight of it. He soon spotted the car again parked alongside of the Anchor Dairy Bar, about a mile from where he first observed the automobile. The officer called the station for assistance. After his superior, Sergeant Sebastian Reis, arrived, Officer Briggs went into the dairy bar. He asked defendant if he was the operator of the vehicle and, after receiving an affirmative reply, asked defendant to step out. They then proceeded to the automobile which was located in the parking lot immediately adjacent to the dairy bar. Before Officer Briggs went into the dairy bar, he had looked into the Mercury and saw MacKenzie lying on the back seat. When he came out with defendant, he saw Sergeant Reis holding MacKenzie. After frisking defendant, Officer Briggs and another policeman drove defendant and MacKenzie to the police station in a police car.

The foregoing recitation of the facts is merely a general discussion of the events leading to defendant's arrest and conviction. We shall discuss specific portions of the record in conjunction with our consideration of the various issues raised by those of defendant's exceptions which he has briefed and/or argued.

I

The defendant's first exception is to the trial justice's

ruling denying defendant's motion to pass the case upon learning that one of the jurors was taking notes while the prosecuting attorney was making his opening statement to the jury. It appears from the transcript that the prosecuting attorney brought this incident to the attention of the trial justice at the conclusion of his opening statement. Thereafter, the trial justice called defendant's counsel to the bench, informed him of what the prosecutor had told him, and then advised the members of the jury that they could not take notes during the course of the trial. In passing on defendant's motion he stated that no evidence had been introduced and no witness had been placed under oath when the alleged note-taking episode occurred; and that if the juror were taking notes, the only thing he could have transcribed that might have affected the trial was the opening statement of the state's attorney. In addition, he noted that the opening and closing statements of counsel made during the course of the trial are not evidence and cannot bind the defendant one way or another. In conclusion he stated that he could not see how this incident prejudiced defendant.

We agree. The defendant has failed to establish how the note-taking and the trial justice's ruling denying his motion to pass the case could have prejudiced him. In our judgment the trial justice did not abuse his discretion in denying defendant's motion.

## II

Under the exceptions briefed and argued under point II of his brief, defendant contends that the trial justice erred in permitting Mr. Grattage to testify about the purchase of a chisel by James R. MacKenzie. He argues that this testimony introduced an extraneous matter into the case and gave an appearance of a conspiracy between defendant and MacKenzie. The sum and substance of his argument is that since this testimony dealt with the actions and con-

duct of a man other than defendant, it had no bearing on the question of the guilt or innocence of defendant and the admission of such evidence constituted prejudicial error. We do not agree.

Mr. Grattage's testimony that he saw MacKenzie leave the car, come into the store, purchase a chisel, and return to the car was relevant and had a bearing on the case against defendant, which involved the possession of burglar tools. In fact, the relevancy and materiality of this testimony are borne out by MacKenzie's subsequent testimony, to which no objection was taken, that he was with defendant the entire day in question, that he got out of the car, that he went into Benny's Wakefield store, that he did buy a chisel, and that the police took him in custody while he was in the back seat of the Mercury sleeping. Mr. Grattage's testimony was relevant on the issues of defendant's presence at Benny's store at the time in question and defendant's possession of burglar tools. *State* v. *Kieon,* 93 R. I. 290, 175 A.2d 284; *State* v. *Reardon,* 101 R. I. 18, 219 A.2d 767.

## III

We now consider defendant's exception to the trial justice's ruling allowing in evidence, over defendant's objection, the articles found by the police in the automobile involved in this case. The defendant argues now, as he did in the superior court, that the search of the vehicle without a warrant violated his rights under G. L. 1956, §9-19-25, under art. I, sec. 6, of our state constitution and art. IV of amendments of the federal constitution.

We note at the outset that defendant is not challenging the validity of his arrest. His attack is aimed exclusively and directly at the legality of the search of the automobile, which was admittedly in his charge and possession at the time he stepped out of the dairy bar with Officer Briggs and was arrested, and the seizure of the articles in question. The sole question for our consideration is whether

the search and seizure was illegal. We hold that it was not.

Searches of motor vehicles must meet the test of reasonableness under the Fourth Amendment of the federal constitution before evidence obtained as a result of such searches is admissible. See *Carroll* v. *United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L.Ed. 543; *Brinegar* v. *United States,* 338 U. S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879. The Fourth Amendment, insofar as here pertinent, provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

But, as the court said in *Preston* v. *United States,* 376 U. S. 364, at 366-367, 84 S. Ct. 881 at 883, 11 L.Ed.2d 777 at 780:

> "Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motor car. * * * But even in the case of motorcars, the test still is, was the search unreasonable. Therefore, we must inquire whether the facts of this case are such as to fall within any of the exceptions to the constitutional rule that a search warrant must be had before a search may be made."

Then the court went on to say:

> "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. * * * This right to search and seize without a search warrant extends to things under the accused's immediate control, * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested * * *. The rule allowing contemporaneous searches is justified, for example, by the

need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. * * * Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. * * * The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage."

In *Preston, supra,* the court found that the search was too remote in time or place to have been made incident to the arrest, and therefore concluded that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment.

Keeping in mind the guidelines set forth in *Preston, supra,* we inquire whether the search in the case at bar meets the test of reasonableness under the Fourth Amendment of the federal constitution and under art. I, sec. 6, of our state constitution. We believe that it does.

Assuming without deciding that defendant's arrest took place at the dairy bar rather than in the parking lot, we fail to perceive any logical basis for invalidating the search of defendant's vehicle and suppressing the fruits of that search. It appears from the evidence that the search of the car in question was commenced within moments of the arrest of defendant who, at the time the search began, was about 10 feet away with Officer Briggs. As we have previ-

ously stated, the car was then situated in a parking lot immediately adjacent to the dairy bar. At the time of the search a bag, which fitted the description of the one bought at Benny's, was also in clear view on the floor in the back of the auto.

To compel the police to seek a search warrant when the facts disclose that the search was commenced so close in time and place to the arrest seems to us to be both irrational and unnecessary to the protection of the right of the general populace to be secure in the peaceful possession of their persons, premises, and effects. This is not a case where the police sought to entrap an individual into the commission of a minor offense in order to conduct a "fishing expedition," nor does this cause present a situation where the law enforcement authorities used a lawful arrest for a particular crime as a pretext to secure the fruits or implements of a totally unrelated crime for which they had no probable cause to arrest but instead, a mere suspicion. *See, e.g., Jones* v. *United States,* 357 U. S. 493, 78 S. Ct. 1253, 2 L.Ed.2d 1514; *United States* v. *Lefkowitz,* 285 U. S. 452, 52 S. Ct. 420, 76 L.Ed. 877.

*Preston, supra,* demands nothing more than that a search of a motorcar meet the test of reasonableness under the Fourth Amendment of the United States constitution before evidence obtained as a result of such a search is admissible. *Id.* at 366. We are aware that the *Preston* court alluded to the traditional bases for allowing searches incidental to an arrest, those being the need to seize weapons and other things which might be used to effect an escape, and the need to prevent the destruction of evidence of the crime. The court went on to note that "* * * these justifications are absent where a search is remote in time or place from the arrest." In the instant case, however, the commencement of the search was closely related in time and place to the arrest. At no time has the United States Su-

preme Court mandated that a search, once lawfully undertaken as incident to an arrest, must be abandoned if the individuals in custody are removed from the scene before the search is completed. We do not feel compelled to be the first court to impose such a requirement.

Even if we concede, which we need not on the basis of the record before us, that defendant and his alleged accomplice were within the physical control of the police at the scene at the time the search was undertaken, a search which was reasonably related in time and place to the arrest was not necessarily precluded. Who can infallibly predict that the police, in the particular circumstances of the situation that confronted them in this case, could have prevented the defendant or his alleged accomplice, if they had been so inclined, from gaining access to a weapon that might have been secreted in the automobile?

Although the police do not complete their search until after a suspect is removed from the scene, we do not desire, nor do we deem it our duty, to engage in post-search speculation concerning the effectiveness of police strictures where the inception of the search of a car is closely proximate in time and place to the arrest. See *People* v. *Loomis,* 231 Cal. App.2d 594, 42 Cal. Rptr. 124; *State* v. *Watson,* 386 S.W.2d 24 (Mo. 1965); *Commonwealth* v. *Dussell,* 214 Pa. Super. 1, 248 A.2d 857; *State* v. *Hoffman,* 64 Wash.2d 445, 392 P.2d 237.

*State* v. *Dufour,* 99 R. I. 120, 206 A.2d 82, is of no help to defendant. The cases are distinguishable. As is pointed out in *Dufour,* at 126, "* * * at the time of his arrest the evidence shows that the officers had no reasonable grounds to believe that a felony had been committed or was being committed or that defendant had committed or was about to commit it." This is different from the factual background in the present case where the validity of the arrest is not disputed.

## IV

The state presented one Gordon L. Smith, a carpenter, for the purpose of describing what use could be made of the tools in question. The trial justice allowed this witness to state, over defendant's objection, to what use some of the tools in evidence might be put. The defendant contends that the ruling of the court permitting such questions constituted reversible error. We do not agree.

The fact that evidence, otherwise relevant, is in its character prejudicial does not, standing alone, constitute a sufficient reason for its exclusion. *State* v. *Reardon, supra,* at 24, 219 A.2d at 771. The defendant was charged with possession of burglar tools. It was incumbent upon the state to prove that the tools in question were adapted and designed for the unlawful uses set out in the statute. *State* v. *Widenski,* 50 R. I. 148, 146 A. 407. The evidence which the state sought to elicit from Mr. Smith was material to one of the main issues in the case and therefore admissible in evidence. *State* v. *Kieon; State* v. *Reardon,* both *supra.*

## V

The defendant's final exception is to that portion of the charge where the trial justice referred to the fact that a failure upon the part of the jury to agree would necessitate a retrial. The defendant argues that the matter of a new trial is outside the jury's province, and that the questioned portion of the charge was in effect saying to the jury: *make a finding of guilty or not guilty because any other act on your part will cause the state to go through the expense of another trial.*

In our opinion this exception lacks merit. *State* v. *Sliney,* 101 R. I. 423, 224 A.2d 603, cited by defendant is of no help to him. It is clearly distinguishable. But, as we said in *Sliney, id.* at 427, 224 A.2d at 605:

"The trial justice did not utter the challenged statement in a vacuum. We must read it in the context of the charge as a whole and more especially in the context of the particular portion of the charge in which it was made."

The questioned portion of the charge appears in the following context:

"* * * you are confined in arriving at your verdict solely to the facts as you find them in accordance with the evidence finally admitted into the record. Any evidence that has been stricken out you will disregard. Any exhibits introduced into the record and marked as complete exhibits, you will consider those.

"Mr. Foreman and Members of the jury, it is not necessary that you unanimously agree. If you do not unanimously agree, we have what is called a disagreement and the case must be tried again. Whether it be six and six or 11 and one one way or the other, the case must be tried anew. In order to find the defendant guilty beyond a reasonable doubt, you must all unanimously agree. In order to acquit the defendant of the charge as alleged, you must all unanimously agree.

"Mr. Foreman, be fair both to the State and to the defendant. Do not allow bias or prejudice to follow you into your jury room. Pass upon the issues raised by the indictment in accordance with the facts as you find them and in accordance with these instructions."

In our judgment the challenged statement is not such that in the context in which it was made it would reasonably convey to a jury composed of ordinarily intelligent lay persons listening to it at the close of the trial, *State* v. *Reid*, 101 R. I. 363, 366, 223 A.2d 444, 446, the meaning attributed to it by defendant. It is obvious that the trial justice was explaining to the jury the procedure they were to follow, and that in the context in which the challenged language was uttered, this is the meaning which it would reasonably convey to the jury under the test laid down in *State* v. *Reid, supra.*

All of the exceptions which the defendant has briefed or argued are overruled, those neither briefed nor argued are deemed to be waived, and the case is remitted to the superior court for further proceedings.

MR. JUSTICE KELLEHER, with whom MR. JUSTICE JOSLIN joins dissenting.

The majority upholds the search on the ground that it was reasonable. I cannot agree.

. In ascertaining whether a search is reasonable or unreasonable, it must be kept in mind that both the federal and state constitutional interdictions against warrantless searches are designed to protect one's right of privacy. It follows therefore that in determining the reasonableness of a search, an examination must be made in each case as to whether or not a defendant has a right to have his privacy remain unimpaired. As an underlying guide in making this finding, I would employ the principle recognized in *Trupiano* v. *United States*, 334 U. S. 699, at 702, 68 S. Ct. 1229, at 1232, 92 L.Ed. 1663, at 1669:

> "It is a cardinal rule that, in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable * * *. This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed upon such activities. * * * To provide the necessary security against unreasonable intrusions upon the private lives of individuals, the framers of the Fourth Amendment required adherence to judicial processes wherever possible. And subsequent history has confirmed the wisdom of that requirement."

. I would therefore hold any warrantless search unlawful if it was practicable for the police to obtain a warrant.[1]

---

[1] A view similar to the one expressed herein can be found in a well-reasoned dissent by Mr. Justice O'Connell in *State* v. *McCoy*, 249 Ore. 160, 437 P.2d 734.

The rule of *Trupiano* was rejected in *United States* v. *Rabinowitz*, 339 U. S. 56, at 66, 70 S. Ct. 430, at 435, 94 L.Ed. 653, at 660, where the Supreme Court said the test "* * * is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." However, the Supreme Court has come full circle because *Rabinowitz* was recently overruled for all intents and purposes in *Chimel* v. *California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685. Only last year in *Terry* v. *Ohio*, 392 U. S. 1, at 20, 88 S. Ct. 1868, at 1879, 20 L.Ed.2d at 905, the Court emphasized that "* * * the police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure * * *."

However, even if one does not adhere to the "practicability view," it is clear that a search warrant is required unless there are exceptional circumstances wherein the need for effective law enforcement outweighs one's right of privacy. The fact that a search without a warrant is to be the exception rather than the rule has been articulated by the Supreme Court on numerous occasions. *United States* v. *Ventresca*, 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684; *Stoner* v. *California*, 376 U. S. 483, 84 S. Ct. 889, 11 L.Ed.2d 856; *Chapman* v. *United States*, 365 U. S. 610, 81 S. Ct. 776, 5 L.Ed.2d 828. The exceptions which have been recognized are (1) a search incident to a lawful arrest; (2) a search made after unequivocal consent has been freely given and (3) a search after a seizure authorized by statute.[2]

The majority upholds the instant search on the basis that it was incident to a lawful arrest and points out that the commencement of the search was closely related in time

---

[2] In *Cooper* v. *California*, 386 U. S. 58, 87 S. Ct. 788, 17 L.Ed.2d 730, it was held that it was reasonable to search the defendant's automobile a week after his arrest. A controlling factor in the court's holding was a California statute which permitted the police to impound motor vehicles and hold them as evidence pending a forfeiture or release in narcotic drug violations.

and place to the arrest. The record fails to show with any great degree of clarity that the search of the automobile actually began within moments of defendant's arrest. Sergeant Reis, the ranking officer and the man who made the search testified that the search did not take place until "after the prisoners were taken to the station." Nevertheless, whether the search began before or after the "prisoners" were transported to the police station, it is obvious that at the time it began defendant and his friend were out of the car and in police custody some distance away.

Searches incident to an arrest are permitted only if the circumstances surrounding the arrest require expeditious police action that cannot await the obtaining of a warrant. The rationale of this exception is found in *Preston* v. *United States,* 376 U. S. 364 at 367, 84 S. Ct. at 883, 11 L.Ed.2d at 780:

> "* * * The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of the evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control."

Recently, in *Chimel* v. *California, supra,* the Supreme Court in speaking of a search incidental to arrest said, "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Furthermore, the court observed "No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and

the area within his reach on the one hand, and more extensive searches on the other."

Chimel was arrested in his residence. The officers then proceeded to search his entire home without benefit of a search warrant. The Supreme Court held that there was no constitutional justification for the search. So, too, here at the time the South Kingstown police examined the interior of the Mercury, Moore was some distance away in police custody. The officers were not in peril, there was no danger that defendant would escape and the burglar tools were in a car which was in the exclusive control of the police. At the time the search was made there was nothing within defendant's reach which he could destroy or use as a weapon.

It is conceded, as it was in *Chimel,* that it may not be practicable to serve a warrant to search an automobile or other vehicle because of the risk that it could be quickly moved out of the locality or jurisdiction in which the warrant must be sought. See *Carroll* v. *United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L.Ed. 543. However, there was no risk that the Mercury would be whisked out of the restaurant's parking lot.

The majority in seeking to bring this case within the ambit of *Preston* indulges in a bit of speculation and asks who could predict whether the police could have prohibited defendant or his companion from returning to the car and obtaining a secreted weapon. The simple answer to this query is that anything is possible. If this type of reasoning were to prevail, the search of the Chimel household could be upheld. After all, who could foretell whether the police could have stopped Chimel from dashing into his bedroom and emerging with a loaded pistol which might have been hidden under the mattress. If we wish to sanction a warrantless search on the basis of a possibility, then the Fourth Amendment and its Rhode Island counterpart,

Art. I, sec. 6, will no longer serve as effective shields against unwarranted intrusions on a citizen's right to privacy. The fact that the officers saw the leather bag on the rear floorboards offers no excuse for their actions. The defendant was charged with the possession of burglar tools. By no stretch of the imagination can we equate a leather bag with such well-known burglar tools as a hammer, a chisel or other such implements.

A search warrant is a basic protection given a citizen to safeguard his right of privacy—be it his home or automobile. An item placed in a glove compartment, trunk or elsewhere in a car is entitled to the same protection from a warrantless search as items located in a home subject, of course, to the rules of a search incident to an arrest.

Sergeant Reis said he found the pinch bar and hammer under the front seat. The other tools were discovered inside the bag. There is also evidence that the car's trunk was opened by the police. There was no necessity requiring the immediate search which occurred here. There appears to be no reason why the officers could not have obtained a warrant to search the defendant's automobile.

I would therefore hold that the trial court erred when it denied the defendant's motion to suppress the evidence and remit the case for a new trial.

*Herbert F. DeSimone,* Attorney General, *Luc R. La-Brosse,* Special Assistant Attorney General, *Donald P. Ryan,* Assistant Attorney General, of Counsel, for plaintiff.

*Philip M. Hak,* for defendant.