STATE

v.

**Bruce G. ROSE.**

**No. 98–278–C.A.**

Supreme Court of Rhode Island.

April 10, 2000.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

The defendant, Bruce G. Rose (defendant or Rose), appeals from a Superior

Court judgment of conviction, following a jury trial, of entering a dwelling with intent to commit larceny. The defendant also appeals from a judgment of conviction, after a jury-waived trial, of two counts of receiving stolen goods of a value over $500. The parties were directed to appear and show cause why the issues raised in this appeal should not be summarily decided. None having been shown, we shall proceed to decide this case at this time.

The defendant initially was charged in a seven-count information with one count of attempted breaking and entering, two counts of receiving stolen goods valued in excess of $500, and four counts of entering a dwelling with the intent to commit larceny therein. With respect to the two counts of receiving stolen goods, defendant waived a jury, and was subsequently found guilty on those counts by the trial justice; the state dismissed two counts of entering a dwelling with the intent to commit larceny therein and the one count of attempted breaking and entering. Of the remaining two counts of entering a dwelling with intent to commit larceny therein, a jury convicted defendant of one count and found him not guilty on the final charge. The facts pertinent to this case follow.

On December 6, 1992, as she was leaving her home in Warwick, Lorn Turner noticed a man on a bicycle in the street in front of her house. Although initially leery of leaving the area because of the suspicious appearance of this individual, she drove away and observed that the bicyclist followed behind her until she lost him on Post Road. When she returned home some ninety minutes later, her suspicions were confirmed when she discovered a broken window in her bedroom, shattered glass on her bed, and some wooden boxes missing from her dresser. She gave the police a description of the man on the bicycle, and was able to identify him several weeks later when presented with a photographic array.

Following another housebreak on January 28, 1993, members of the Warwick Police Department were alerted to be on the lookout for a white male suspect on a bicycle, wearing sunglasses, a knit cap and a three-quarter-length jacket. Shortly after this broadcast, Warwick Detectives Lisa Farrell (Det.Farrell) and Dan Gillis observed a man matching this description who was riding a bicycle while balancing a plastic trash bag on the handlebars. Detective Farrell approached this man, who identified himself as Bruce Rose and said he had been picking up trash. When asked about the contents of the trash bag, Rose indicated that he did not wish to discuss it with the officers. However, Farrell was able to spot several porcelain doll faces and a laminated magazine cover through a rip in the plastic bag. Rose was then driven to the Warwick police station, where a watch and other pieces of jewelry were found in his coat pockets. A search of Rose's home pursuant to a search warrant uncovered numerous items that had been reported stolen. They eventually were returned to their owners.

Later that evening, Gail Felix (Felix) returned to her home on Airway Road in Warwick and discovered that her sliding glass door had been shattered and that items were missing from the house, including a novelty magazine cover featuring her father's picture, jewelry and several porcelain dolls that she had collected. When asked whether she was familiar with a man named Bruce Rose, Felix told the police that Rose had stopped by her home the previous summer offering to perform yard work for her and that she had hired him to mow her lawn on two occasions. Later that evening, Felix identified as belonging to her the dolls and the jewelry that Rose had secreted in the trash bag.

On appeal, defendant challenged the denial of his motion to suppress the fruits of the search on the ground that the search warrant was defective because the description of the property to be seized lacked sufficient specificity and was therefore invalid. The language used in the warrant

described the property and articles to be searched for as follows:

> "Any and all evidence of BREAK-ING and ENTERING of dwellings, and Possession of Stolen Goods, to include, but not limited to jewelry, coins, collectors' items, electronic equipment, etc."

The Fourth Amendment to the United States Constitution requires that a valid warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." Article 1, section 6, of the Rhode Island Constitution mandates that a warrant "describ[e] as nearly as may be, the place to be searched and the persons or things to be seized." Relying upon *State v. Jeremiah*, 696 A.2d 1220 (R.I. 1997), defendant maintained that the warrant was invalid on its face because it failed to adequately describe the jewelry, electronic equipment, or the "collectors' items" for which the officers were to search. The defendant maintained that the police knew, as in *Jeremiah*, that the description of the things to be seized could have been described with greater specificity, and therefore it is apparent that the police failed to exhaust "reasonably available means to 'describ[e] as nearly as may be * * * the place to be searched'" and the persons or things to be seized. *Id.* at 1225.

■ In light of the circumstances of this case, although hardly an illustration of precision, we deem the description to be adequate and sufficiently descriptive to satisfy the Fourth Amendment to the United States Constitution and article 1, section 6, of the Rhode Island Constitution. In *State v. Wilshire*, 509 A.2d 444 (R.I.1986), we had occasion to pass upon the vague language of a search warrant that authorized a search of a defendant's home for "evi-

dence relating to the homicide of John K. Wilshire." *Id.* at 451. The defendant in *Wilshire* asserted that this language transformed the warrant into a "general warrant" or writ of assistance authorizing the search of any premises without prior judicial authorization. *Id.* To the contrary, relying upon *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), we determined that the description of evidence relating to a particular offense, the homicide of a named individual, "was as specific as the circumstances of the case permitted," concluding that the warrant, which also "set forth an illustrative list of the types of evidence that would be sought and which was supported by a detailed affidavit, is a far cry from the 'general warrant' of colonial times." *Wilshire*, 509 A.2d at 452.

In the case at bar, the defendant, who was taken into custody during the afternoon of January 28, 1993, was likely to be released on bail or recognizance within a short time of his arrest, thus necessitating the request for authorization to execute the warrant during the nighttime. We are satisfied that these circumstances presented some urgency to conduct a search of this dwelling before the defendant had the opportunity to remove or destroy the evidence relating to a series of housebreaks in the city of Warwick. In light of *Andresen* and *Wilshire*, we are satisfied that the language employed in the warrant was as specific as the circumstances permitted, and therefore passes the particularity test. Having concluded that the warrant was valid on its face, we need not address the issue of whether the good faith exception to the warrant requirement as set forth in *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), is applicable to the facts of this case.[1]

---

1. We note, however, that *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), concerned a technical error on the part of the issuing judge that ultimately rendered the warrant invalid on the ground that it misdescribed the items to

be seized. The trial court upheld the warrant, finding that the police had acted in good faith in executing what they reasonably believed to be a valid warrant. The Supreme Court upheld the denial of defendant's motion to suppress, concluding that the officers took

■ The defendant next challenges the propriety of the trial justice's decision to allow the jury to take notes throughout the trial. The defendant further contends that if the note-taking is deemed appropriate, the trial justice failed to give a cautionary instruction to the jury with regard to the note-taking, and this constitutes reversible error. We disagree.

At the commencement of the trial, the trial justice ordered the distribution of pads and pens to the jury. The defendant objected to this on the ground that it was improper for jurors to be permitted to take notes during trial. Although we have never had the opportunity to pass upon this question directly, in *State v. Moore*, 106 R.I. 92, 256 A.2d 197 (1969), we upheld the denial of the defendant's motion to pass the case upon the discovery that a single juror was taking notes during the state's opening statement. The trial justice found that no evidence had been received before the note-taking was discovered, and this Court held that the defendant failed to establish how his case was prejudiced by the note-taking and the refusal to declare a mistrial.

Here, after defendant made a general objection to the note-taking procedure, the trial justice inquired of defense counsel if he had any specific objections or whether he had anything he wished to add to the court's instructions about the procedure without waiving his objection to the entire ruling. The defendant made no further objection and declined to request a cautionary instruction. However, defendant argued on appeal that the trial justice was obliged to *sua sponte* give a cautionary instruction relative to the use of juror notes in order to prevent the occurrence of improprieties during jury deliberations. We disagree. In his instructions to the jury, the trial justice admonished the jurors that it was their collective memories that controlled with respect to the facts of the case. The defendant declined the trial justice's invitation to submit to any further instruction. Finally, defendant has failed to demonstrate any prejudice to his defense because the jury was allowed to take notes.

The decision to allow note-taking, like the conduct of a trial in general, has been held to rest within the sound discretion of the trial justice, who is best situated to gauge any adverse consequences flowing from a novel procedure. *See* Annotation, *Taking and Use of Trial Notes by Jury*, 36 A.L.R.5th 255, 289–304 (1996). Indeed, the defendant has acknowledged that the majority of jurisdictions that have addressed this issue have decided that the trial justice is vested with broad discretion to allow jurors to take notes during a trial. These courts have often concluded that any drawbacks that may arise are significantly outweighed by the potential benefits of the practice. *State v. Mejia*, 233 Conn. 215, 658 A.2d 571 (1995); *see generally* Annotation, 36 A.L.R.5th 255 (1996), and cases cited therein. Moreover, even where the practice has been declared to be improper or impermissible, it has not been found to constitute prejudicial or reversible error. *See State v. Jumpp*, 261 N.J.Super. 514, 619 A.2d 602 (App.Div. 1993) (practice of juror note-taking is improper in the absence of record demonstration setting forth the precise reasons why the practice was beneficial; however, it does not constitute reversible error without a demonstration of actual prejudice resulting from the procedure).

■ Therefore, we are satisfied that the decision to allow or disallow juror note-

every step that could reasonably be expected of them and that "a reasonable police officer would have concluded, as [the officer here] did, that the warrant authorized a search for the materials outlined in the affidavit." *Id.* at 989, 104 S.Ct. at 3428, 82 L.Ed.2d at 744. The Court concluded that since the conduct of

the police was "objectively reasonable and largely error-free," the deterrent function of the exclusionary rule had no applicability in a case where the error was committed by the issuing magistrate. *Id.* at 990, 104 S.Ct. at 3429, 82 L.Ed.2d at 745.

taking in the context of a trial rests within the sound discretion of the trial justice who, based upon his or her experience and aided by the vantage point of a front row seat at the trial, is in the best position to make this call and to fashion an appropriate instruction about the value and potential detriment surrounding the practice. Again, we note that defendant has failed to demonstrate how he was prejudiced by the trial justice's decision to allow note-taking, particularly when the jury returned a verdict of guilty on only one of the two remaining counts. We are therefore satisfied that the trial justice's decision to allow note-taking was not improper, nor did his failure to give a cautionary instruction constitute reversible error.

The defendant's final assignment of error is the denial by the trial justice of defendant's motion for a new trial with respect to the charge of breaking and entering. The defendant argued that although the evidence is capable of supporting a finding that he was in possession of goods stolen from the home of Felix, there was no evidence demonstrating that he broke into her home. The defendant maintained that there was no eyewitness testimony placing him at or near the Felix home on the day of the break and that the lone fingerprint at the point of entry did not match his prints, and thus there was insufficient evidence demonstrating that he actually broke into the dwelling. The trial justice noted that the evidence in this case did not require a "super juror" to conclude, in light of the overwhelming circumstantial evidence in this case, that Rose, who had worked for Felix the previous summer, had actually been inside her home, was apprehended in the vicinity on the day of the break, and was found to possess the very magazine cover and porcelain dolls that Felix later reported stolen, did unlawfully break and enter into her home. We therefore are satisfied that the trial justice, in denying Rose's motion for a new trial, did not overlook or miscon-

ceive material evidence, nor was he clearly wrong.

Accordingly, for the foregoing reasons, the defendant's appeal is denied and the judgment of conviction is affirmed. The papers in this case may be remanded to the Superior Court.