253 A.2d 593.

STATE *vs.* ALBERT WRIGHT, JR.

MAY 21, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is an indictment charging the defendant with robbery. The jury convicted him and, after denying his motion for a new trial, the trial justice sentenced him to a term of 10 years. The case is before us on the defendant's bill of exceptions, which consists of 33 separate exceptions. In accordance with our established practice we consider only those exceptions which the defendant has briefed or argued. *State* v. *Quattrocchi,* 103 R. I. 115, 235 A.2d 99; *State* v. *McGregor,* 82 R. I. 437, 111 A.2d 231.

On Friday evening, March 31, 1967, shortly after 8 p.m., Alcide R. Jette was held up by an armed robber at his liquor store at 1081 Eddy Street in Providence. He called the Providence police and upon their arrival gave them a description of the alleged robber. He also told the police that he knew the robber, that the latter had been to his store before, including the evening previous to the robbery. He testified that although he did not know his name, the man whom he described had been in his store perhaps three or four times a year for about three years; and he knew he was from the neighborhood. He also testified that in addition to seeing him in his store before, he had seen him on the street at other times. At the request of the police Mr.

Jette, at about 10:30 p.m. the night of the robbery, went to the police station to look at some photos. He viewed several hundred photos for about an hour and then identified the defendant as his assailant. Mr. Jette testified that shortly after this he was told the name of the defendant by one of the detectives.

As a result of the information they received from Mr. Jette, the police went to defendant's last known address. When they did not find him there, they cruised the neighborhood seeking defendant or information as to his whereabouts. At about 11:45 p.m. that night they received information, from an informer whom they testified was reliable, that defendant could be found at his sister's apartment, which was located at 991 Eddy Street, not too far from Mr. Jette's store. The police went to the apartment at about 12:15 a.m. The testimony as to what happened when they arrived there is in conflict. The police testimony is that after knocking at the door and telling the sister for whom they were looking, she said there was no one there who fitted the description the police gave her, and she then invited them in to look around if they so desired. The police testified that they entered but did not conduct a search of the premises. Their testimony is that the first room they entered was a bedroom from which they went into the kitchen; that their attention was drawn to the pantry which was right off the kitchen; that one of the officers saw the door move and immediately went into the pantry and saw the defendant behind the door; and that they immediately placed defendant under arrest. The police testified that immediately after placing him under arrest, they notified him of his constitutional rights.

Sergeant Pasquale R. Rocchio testified that when defendant was first arrested at the home of his sister, he was given the opportunity to exercise his constitutional rights. He testified that:

"I told him he could remain silent, anything he said would be used against him in a court of law, and that he had a right to an attorney. If he could not afford an attorney, we would supply him with one."

Patrolman Robert J. Cassidy who was with Sergeant Rocchio at the time of the arrest corroborated Sergeant Rocchio's testimony. He added that Rocchio told defendant he had the right to make a telephone call to a lawyer of his own free choice, and if he could not contact a lawyer one would be supplied by the court.

After giving defendant the warnings the police released him to the custody of the detective division. He was taken by detectives to the police station about 12:30 a.m. It is undisputed that the police had no search warrant when they entered the apartment nor any arrest warrant when they arrested defendant.

Mr. Jette testified that later that night, as a result of a telephone call from the police, he went to the detective bureau at the police station; that about 12:30 a.m. he saw defendant in the room adjacent to the one where he was situated through a one-way glass window; that he recognized defendant; and that he identified defendant as the person who held him up. It appears that Mr. Jette identified defendant in a two-man line-up. The defendant's exceptions to the following rulings allowing Mr. Jette's answers are the basis of one of the issues raised in this proceeding. The state was questioning Mr. Jette, and the trial justice allowed the following answers to stand over defendant's objections:

"Q: Whom did you recognize?
       * * * .

 A: Albert Wright, Jr."

"Q: Was there anyone standing next to him?
       * * *

 A: Yes there was."

"Q: How many men were there standing there, not including the defendant?
* * *

A: This one colored man and perhaps one or two other policemen in plain clothes."

"Q: Did you identify him as the man who, as you put it, stuck you up at your place of business earlier, in the early hours?
* * *

A: I did."

"Q: There was no doubt at that time, whatsoever, that is the same man you say was there, the same man who had previously stuck you up at your place of business?
* * *

A: There was no doubt at all."

Likewise, defendant's exceptions to the rulings allowing, over defendant's objections, the answers of Sergeant John J. Leyden, with respect to the line-up are the basis of the same issue. The following questions were put to Sergeant Leyden by the state:

"Q: Do you know, in your presence, whether Mr. Jette had an opportunity to view the line-up through that mirror?
* * *

A: Yes sir, he did."

"Q: Did he identify anyone?
* * *

A: Yes sir, he did."

"Q: And whom did he identify?
A: Albert Wright, Jr."

Sergeant Leyden then testified that there were two men in the line-up; that they were both colored, one being the defendant; and that the sole reason the police only had two people in the line-up was because on that particular night they only had two colored people locked up. He also testified that he brought defendant into another room, after the identification, to notify him of his rights, that

"* * * he had a right to remain silent, anything he did say would be held in a court of law against him. He had a right to an attorney, and if he couldn't afford an attorney one would be provided for him."

When asked whether defendant showed any signs of understanding what he had said to him the sergeant replied that defendant said he did not want to know anything. Sergeant Leyden also testified that he told defendant that "* * * it was a serious crime, that he had just been identified" and that defendant said: " 'I don't want to know anything.' "

The defendant's version of what transpired at the apartment is in conflict with the police testimony. Alberta Wright, defendant's sister, explained how Sergeant Rocchio and the other police officers gained entrance into the apartment as follows:

"About a quarter after eleven a policeman came and knocked at the door, and I said, 'Who is it?' and he said, 'Hank.' I asked the boys playing cards, I said, 'Do you know him?' They said, 'Maybe someone your brother knows.' I opened the door and he said, 'Who lives here?' I said I did. I said, 'Come in. Who are you looking for?' They passed me and went into the kitchen — the chief, whoever he was, went into my bedroom and started searching."

In her testimony as a witness for her brother she said she lived at 991 Eddy Street with her four children and her brother. She denied that the police described the person they were looking for or that she invited them in to look around if they so desired. She stated that the reason that she opened the door was because she thought it was Hank coming in to play cards with the other boys.

The defendant testified in his own defense. He said he lived at 991 Eddy Street with his sister and her children on March 31, 1967, and for four or five months before. He denied being in Mr. Jette's store on the night of the robbery, but admitted being in the store two or three times in

the last two or three years, the last time being in 1965. He testified that at the time of the robbery he was playing cards at his sister's house; that when the police came in he was in the pantry getting a glass of water; that when he came out of the pantry, the police asked him his name and then took him to the police station where they asked him a lot of questions and then placed him in the line-up. He denied that the police had given him any warnings as to his constitutional rights, except before he went into the line-up when he was told "You don't have to answer any questions." He stated that other than for that statement by the police, he was at no other time informed of his right to remain silent. He also said that he asked for a lawyer before they took him before the line-up because Sergeant Leyden said "You don't have to answer any questions * * * You know what you say can be held against you."

Other alibi witnesses testified for defendant, but a discussion of their testimony is not necessary to a determination of the issues raised in this proceeding.

# I

The defendant's exceptions to the trial justice's rulings allowing Mr. Jette and Sergeant Leyden to testify as to Mr. Jette's identification of defendant in the line-up are the basis of his contention that he was deprived of his constitutional right to be represented by counsel at the time of the line-up. He argues that, at this stage of the proceedings the line-up was extremely critical to him, and therefore, he was entitled to counsel in accordance with the principles set forth in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L.Ed.2d 1149; *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L.Ed.2d 1178, and *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199. This contention has no merit.

The line-up identification referred to in the present case

occurred on April 1, 1967. *Wade, Gilbert* and *Stovall* were decided on June 12, 1967. In *Stovall* the court held that rules requiring exclusion of identification evidence which is tainted by exhibiting the accused for identifying witnesses before trial in absence of his counsel are not to be applied retroactively. And in *State* v. *Nordstrom,* 104 R. I. 480, 244 A.2d 842, we pointed out in the footnote at 488, 244 A.2d 847 that we would not apply the right to counsel principles retroactively in identification cases. We note here that the exceptions which defendant has briefed and argued relate to rulings affecting line-up identifications, and not in-court identifications. Under the law as it stood prior to *Wade* and *Gilbert,* the challenged evidence was admissible, if made under circumstances precluding unfairness or unreliability. *State* v. *Nordstrom, supra.*

We next consider defendant's argument that the line-up was inherently unfair and conducive to an erroneous identification. This raises the question whether the confrontation resulted in such unfairness that it infringed his right to due process of law. See *Stovall* v. *Denno, supra,* at 299. As the court said in *Stovall* at page 302, "* * * a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it * * *." We can find nothing about the line-up which suggests unfairness, unreliability or anything conducive to an erroneous identification.

In passing on an issue such as this, each case must be judged on its own facts. What are the facts here? Mr. Jette knew defendant by sight prior to the crime and knew that he lived in the neighborhood. The defendant came in the store the night before the holdup, when the store was adequately illuminated. Although Mr. Jette did not know the defendant by name, he knew him well enough to say at the time of the holdup "I didn't think you would do this to me." He gave a detailed description of defendant

immediately after the holdup and subsequent thereto. Mr. Jette looked at several hundred photos and positively identified the photo of defendant as the robber. When Mr. Jette was viewing the line-up there was no unnecessary suggestion by the police. The reason why only two people were in the line-up was because on that particular night the police had only two people locked up and both were similar to each other except for their clothes.

There is nothing in the record showing any inherent unfairness in the manner in which the police presented defendant in the line-up for pretrial identification. For the reasons stated we cannot say that defendant was deprived of due process of law and therefore we hold there was no error in admitting the challenged testimony.

## II

The defendant's next contention is that in apprehending him the police made an illegal arrest and conducted an illegal search, both in violation of his constitutional rights, state as well as federal. He posits his contention as follows:

"Was [sic] the defendant's constitutional rights violated at the time of his arrest in that the arrest was made in the nature of suspicion and not probable cause at the home of the defendant without his consent and without the benefit of a search warrant or an arrest warrant, in violation of the fourth amendment of the constitution of the United States and Sec. 6 of Article I of the Constitution of R. I.?"

The questions raised under this argument are not properly before us. Neither in his brief nor in his oral argument does defendant relate the issues he now raises to specific exceptions to specific rulings. The transcript references included in his supplemental brief do not cure this procedural defect; they contain no rulings by the trial justice to which defendant made any objections or took any exceptions. As we said only recently in *State* v. *Quattrocchi*, 103 R. I. 115 at 117-18, 235 A.2d 99 at 101:

"\* \* \* we limit our review in criminal cases to rulings made in the course of a trial to which exceptions have been properly reserved. It is the exception which enables a party to bring upon the record that he has made a legal objection to a ruling; and that exception must relate to a specific ruling or decision. A blanket or a general exception will not suffice."

Nor are we faced with the situation where a strict compliance with procedural requirements may be excused because insistence thereon would deprive the defendant of his constitutional protections. See *State* v. *Quattrocchi, supra,* footnote 1, at 177, 235 A.2d 101. No evidence was seized, nor incriminating statements made by the defendant or anyone present at the time of the arrest in the apartment. In the circumstances a determination of the question whether the arrest and search were constitutionally valid has no relevance in this proceeding and requires no further consideration.

Those of defendant's exceptions which he has briefed and argued are overruled, those neither briefed nor argued are deemed to have been waived, and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *Luc R. LaBrosse,* Special Assistant Attorney General, of counsel, for plaintiff.

*James Cardono,* Public Defender, *Moses Kando,* Assistant to the Public Defender, for defendant.