274 A.2d 736.
STATE *vs.* WILLIAM J. DANAHEY.

MARCH 17, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The defendant was tried before a justice of the Superior Court and a jury on an indictment charging him with the murder of his wife. The jury returned a

verdict of guilty of murder in the second degree. The trial justice denied the defendant's motion for a new trial and sentenced him to a term of 26 years in the Adult Correctional Institutions. The case is here on the defendant's exceptions to certain evidentiary rulings.

The defendant and his wife, Deborah Danahey, had been married for about ten years. They resided together in a second-floor apartment at 563 Prospect Street in the City of Woonsocket. On the evening of Monday, January 15, 1968, the body of defendant's wife was found lying across her bed fully clothed with a man's necktie wound securely around her neck. The tie in question had been given to defendant by a friend.

The body was discovered by her son and son-in-law, who were requested to go to the Danahey residence by decedent's daughter by a prior marriage in response to several telephone conversations which caused her concern. The first of these calls was made by defendant to a baby-sitter of the daughter informing her that defendant and his wife were going to visit Mrs. Danahey's sister in New Jersey. Another call was from decedent's employer informing the daughter that her mother was not at work on that day, January 15, 1968. Two of the telephone conversations were with the sister in New Jersey informing decedent's daughter that neither her mother nor defendant was there in New Jersey.

Entrance to the locked apartment was gained by obtaining a key from the landlord's daughter. After discovering the body the police were called from the phone in the victim's apartment. Near the body, on the bed, in plain view was decedent's pocketbook. Also in plain view, leaning against the pocketbook, was a note, which was admitted in evidence over defendant's objection and is marked

state's exhibit 3.[1] The chief inspector of the Detective Division of the Woonsocket Police Department, who was at the scene on the night in question, testified that because of the nature of the contents of the note he thought there might be another body on the premises and, therefore, sought and obtained permission from decedent's son to search the apartment. During the search the police searched the pocketbook which was on the bed and a desk which was in the den next to the bedroom.

When asked why he searched the pocketbook and the desk, the inspector replied that he wanted to find whatever evidence he could to make a comparison with the writing that was on the note found on the bed, and to see if they could find the pen with which it was written.

In the pocketbook they found a pen which was admitted in evidence over defendant's objection and is marked state's exhibit 9. Another pen was found in one of the desk drawers in the den. It also was admitted in evidence over defendant's objection and is marked state's exhibit 10. Also found in one of the desk drawers was a letter and envelope. The envelope is addressed to Mrs. William J. Danahey, 563 Prospect Street, Woonsocket, Rhode Island, and in the upper left-hand corner appears the legend "Wm. J. Danahey, R.I. Med. Center, Box 5." It is postmarked "Sep. 7, 1965 Howard, R.I.," and the letter is signed "Bill." At the top of the letter is the notation "R.I. State Hospital" and the date "August 31, 1965." The letter and envelope,

---

[1]Exhibit 3 reads as follows:

"Kids,

"Sorry I had to do this. When you find me I'll be dead too. It's better this way.

"Bill

"I loved her too much and couldn't take any more from her and can't take any more pain. Again I know you will never forgive me but I'm sorry."

which are marked state's exhibit 11, were likewise admitted in evidence over defendant's objection.

The police also checked with the lady in the first-floor tenement. She turned over to them a note allegedly written by defendant to the landlady advising her that he and his wife were going to New Jersey. She took the note, which was torn in several pieces, out of the wastebasket in her kitchen and gave it to the police. This note was admitted in evidence over defendant's objection and is marked state's exhibit 6.

The decedent was last known to be alive at about 10 a.m. on Sunday, January 14, 1968, having spoken to her daughter on the telephone. The defendant was seen leaving the house with a suitcase and bag at about 1:30 p.m. on the same day. It also appears from the evidence that during the afternoon of January 14, 1968, defendant cashed several small checks, consumed some liquor and also purchased some bottled liquor at various places in nearby communities. On January 16, 1968, he was apprehended in Albany, New York, following an automobile accident.

The medical examiner testified that death was due to strangulation and he placed the time of death at between 24 and 36 hours before his examination which took place at 11:15 p.m. on January 15, 1968.

I

The defendant's exception 33 is to the trial justice's action overruling his objection to the introduction of state's exhibits 9, 10, and 11 on the ground that they were seized in violation of his rights under the fourth and fourteenth amendments of the Federal Constitution and art. I, sec. 6 of our state constitution.

We need not decide these issues, however, because even if the articles in question were improperly admitted, that error was harmless constitutional error in light of the record

as a whole.[2] As the Supreme Court said in *Chapman* v. *California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709, "* * * there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction."

In *Chapman*, the Court applied harmless error to a violation of defendant's fifth-amendment rights as guaranteed under *Griffin* v. *California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. While the Court has not specifically considered the issue of the applicability of the harmless-error doctrine to evidence illegally seized and admitted in violation of *Mapp* v. *Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, recently, in *Chambers* v. *Maroney*, 399 U.S. 42, 52-53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419, 429, the Court made reference to a possible fourth amendment violation by concluding:

> "Neither of petitioner's remaining contentions warrants reversal of the judgment of the Court of Appeals. One of them challenges the admissibility at trial of the .38 caliber ammunition seized in the course of a search of petitioner's house. The circumstances relevant to this issue are somewhat confused, involving as they do questions of probable cause, a lost search

[2]We are not unmindful of our dicta in *State* v. *Leavitt*, 103 R. I. 273, 287, 237 A.2d 309, 317, where in reliance on the language in *Fahy* v. *Connecticut*, 375 U. S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, we said in effect that the admission of illegally obtained evidence constituted reversible error, notwithstanding the legality of whatever other evidence the state made available to the jury and on which they might have reached their verdict.

However, since the *Fahy* decision in 1963, the Supreme Court of the United States has indicated in *Chambers* v. *Maroney*, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, that evidence obtained in violation of the fourth amendment might in certain circumstances constitute harmless error. After careful consideration, we are persuaded that under the facts of this case, the doctrine of constitutional harmless error is applicable here. See discussion, *infra*.

warrant, and the Pennsylvania procedure for challenging the admissibility of evidence seized. Both the District Court and the Court of Appeals, however, after careful examination of the record, found that *if there was error in admitting the ammunition, the error was harmless beyond a reasonable doubt.* Having ourselves studied this record, we are not prepared to differ with the two courts below. See *Harrington* v. *California,* 395 U.S. 250 [89 S.Ct. 1726, 23 L.Ed.2d 284] (1969)." (Emphasis supplied.)

See also, *Harmless Constitutional Error, a Reappraisal,* 83 Harv. L. Rev., 814, 820-24, *Harmless Constitutional Error,* 20 Stan. L. Rev., 83, 93-94, and other cases which have found harmless error in fourth-amendment violations.[3] On the basis of this authority, we are convinced that the harmless error concept is applicable to the case at bar.

Under the federal test of harmless error, announced in *Fahy* v. *Connecticut,* 375 U.S. 85, 86-87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171, 173, an error is prejudicial unless there is no "reasonable possibility" that the error "might have contributed to the conviction." This rule was quoted with approval in *Chapman* v. *California, supra,* and the Court there added: "* * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710-11. This *Chapman* test was reaffirmed in *Harrington* v. *California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Thus, defendant's conviction is to be affirmed if the error caused by the ad-

---

[3]See *Turner* v. *United States,* 426 F.2d 480 (6th Cir. 1970); *United States* v. *Bankston,* 424 F.2d 714 (5th Cir. 1970); *United States* v. *Kearney,* 420 F.2d 170 (D.C. Cir. 1969); *United States* v. *Castro,* 418 F.2d 230 (2nd Cir. 1969); *Otey* v. *United States,* 417 F.2d 559 (D.C. Cir. 1969); *Pinelli* v. *United States,* 403 F.2d 998 (10th Cir. 1968); and Mr. Justice Blackmun's opinion for the court in *Theriault* v. *United States,* 401 F.2d 79 (8th Cir. 1968). See also Mr. Justice Stewart's concurring opinion in *Chapman* v. *California,* 386 U. S. at 44 n. 2, 87 S.Ct. at 838 n. 2, 17 L.Ed.2d at 722 n. 2.

mission of the pen and letter into evidence was harmless beyond a reasonable doubt.

After having examined this record most carefully, we conclude that the case against William J. Danahey was so overwhelming that the violation of *Mapp* v. *Ohio, supra,* is clearly harmless under the mandates of *Chapman* v. *California* and *Harrington* v. *California,* both *supra.*

In addition to the letter in issue here, there were two other exemplars used to identify the defendant as the writer of the note which was signed "Bill," and found in open view beside the body. One letter was written by defendant while awaiting trial at the Adult Correctional Institutions. Further, the remaining exemplar, the note left for the landlady, was written with the same type and color pen as was used to write the note found next to the deceased, that being a red, marker-type broad point instrument commonly called a "magic marker." Therefore, the landlady's note became the most effective bit of evidence offered to prove the fact that defendant was the writer of the note found with the body. The inclusion of the allegedly illegally seized letter, written on different paper and with a blue ballpoint pen, had little or no effect upon the jury's ultimate conclusion. There was also ample evidence of suspicious conduct by defendant on the date of the murder, his flight from the state, and subsequent apprehension in Albany, New York, two days later.

Giving full credence to the constitutional rights of defendant, our decision is based solely on the evidence in this record, and that evidence mandates that under this exception defendant's conviction must be undisturbed. *Chapman* v. *California, supra; Harrington* v. *California, supra.*

The defendant's exception 33 is hereby overruled.

## II

The defendant's exception 69 challenges the trial justice's action overruling his objection to the admission of two

letters used as standards in comparing defendant's handwriting. Since we have concluded that if the admission of one of these letters, exhibit 11, was error, that error was harmless beyond a reasonable doubt, further discussion of that evidence is unnecessary. However, defendant also argues that another letter, state's exhibit 15, was not a proper standard upon which the expert should be allowed to make a comparison between the handwriting on the exemplar and the disputed writing found next to the body. We do not agree.

Exhibit 15 is a letter addressed to Mr. and Mrs. Arthur Caswell, Jefferson St., Milford, Massachusetts. The stamp on the letter indicates that it was censored by the correspondent department at the Adult Correctional Institutions on January 27, 1968. A notation on the letter indicates that it was "From William Danahey" and the letter is signed "Bill." The Caswells were close friends of the decedent and defendant. They testified that they had received a letter purportedly written by defendant from the Adult Correctional Institutions; that the envelope was addressed to them, sent by defendant and allegedly signed by him. They identified exhibit 15 as the letter received by them.

The state presented the mail censor officer at the Adult Correctional Institutions as a witness. He described the method of handling mail there and testified that defendant was in the awaiting trial section at the time the letter was written; that he had censored the letter in question; and that there was no other person there with the same name as defendant.

After hearing further argument, in the absence of the jury, on the abmissibility of these exhibits, the trial justice held that the writing was properly in evidence; that its authenticity had been proved to his satisfaction beyond a

reasonable doubt; and that it would be used as a standard of comparison.

The defendant raises the issue of whether the trial justice abused his discretion in allowing the letter in evidence. General Laws 1956 (1969 Reenactment) §9-19-17, reads as follows:

> "Comparison of writings.—Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses; and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

The statute clearly vests in the trial justice discretionary power to determine whether or not a writing is genuine. Such writing, when proved to the satisfaction of the trial justice to be genuine, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute. The defendant claims that the testimony of the Caswells does not indicate that they were familiar with defendant's handwriting. He argues further that the Caswells could not possibly testify that defendant himself wrote the letter which they received. Finally, he argues that the state's evidence with respect to exhibit 15 was not "clear and undoubted" testimony to prove the genuineness of exhibit 15 and that, therefore, the trial justice abused his discretion in allowing this letter in evidence. To support these claims he cites *Brantley* v. *State*, 84 Fla. 649, 94 So. 678, and *State* v. *Brassfield*, 33 Idaho 660, 197 P. 559.

We have read the cases cited by defendant, but, because the case at bar is controlled by our statute, it will serve no useful purpose to discuss those cases. Whatever the rule may be elsewhere, we are governed by our statute. As we have previously stated, it vests discretionary power

in the trial justice. The writing proposed to be used as a standard must be proved genuine to the satisfaction of the trial justice. Because this is a criminal case such proof must be beyond a reasonable doubt. On the basis of the testimony of the Caswells and the censor officer, the trial justice held that the authenticity of exhibit 15 had been proven to his satisfaction beyond a reasonable doubt and that, therefore, it could be used as a standard for comparison. It is true, as defendant points out, that the trial justice's conclusion was based on circumstantial evidence.[4] But, circumstantial though it is, it was sufficient to convince the trial justice, and we cannot say that his finding was an abuse of discretion. We are satisfied that his discretion has been soundly and judicially exercised in the light of reason applied to all the facts. *Atlantic Refining Co.* v. *Director of Public Works,* 102 R. I. 696, 711, 233 A.2d 423, 431.

### III

Under exceptions 52, 53, and 54, defendant argues that the trial justice committed prejudicial error in admitting in evidence, over his objection, state's exhibits 17-A, 17-B, 17-C and 17-D. These exhibits are four colored slides of decedent's body, taken three days after her death while the body was on the autopsy table at the morgue. They were used by the state in connection with the testimony of the doctor who performed the autopsy and were used by him in explaining the nature and cause of decedent's death.

The defendant argues that the primary purpose these colored slides served was to inflame the jury, to the preju-

---

[4]For cases where circumstantial evidence has been held substantial proof of authenticity. see *Rose* v. *State,* 124 Tex. Crim. 377, 62 S.W.2d 121; *Phillips* v. *Conant,* 37 Del. 97, 180 A. 593; *Nordyke* v. *State,* 213 Ind. 243, 11 N.E.2d 165; *State* v. *Coleman.* 17 S.D. 594, 98 N.W. 175; *Williams* v. *Conger,* 125 U. S. 397, 8 S.Ct. 933, 31 L.Ed. 778; *State* v. *Ryder,* 80 Vt. 422, 68 A. 652. See also *Annot.,* in 41 A.L.R.2d 575.

dice of defendant; that they were surplusage because the state had already introduced several black and white photographs of decedent; and that they did not explain any relevant facts which had not already been explained.

The prosecution argues that these colored slides were relevant; that their use was purely technical; and that the trial justice did not abuse his discretion in admitting them into evidence.

We have examined the exhibits and it is true that they present a gruesome picture. But as this court pointed out in *State* v. *Kieon,* 93 R. I. 290, 175 A.2d 284, the determination of the relevancy and materiality of photographs is ordinarily a matter within the sound discretion of the trial justice and where a photograph constitutes competent evidence and reasonably tends to prove or disprove some material facts in issue, it is admissible in evidence even though it may have an influence beyond the strict limits of the purpose for which it was admitted. These colored slides were used to explain the nature and cause of decedent's death. Whether it was necessary to use them, in view of the presence of other photographs which were black and white, was a matter of judgment. If we were persuaded that the only purpose for using them was unduly to arouse the passions of the jurors, we would undoubtedly hold that prejudicial error was committed. The trial justice obviously did not believe that this was the only purpose. We are likewise satisfied.

On this record we cannot say that there has been an abuse of discretion. The fact that the colored slides depict an unpleasant sight is not grounds for finding an abuse of discretion. Compare *State* v. *Winston,* 105 R. I. 447, 451, 252 A.2d 354, 356, where the court noted:

"The fact that a picture may depict the details of a shocking crime is no reason to bar its use."

All of the defendant's exceptions are overruled and the

case is remitted to the Superior Court for further proceedings.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Scott K. Keefer,* Special Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Moses Kando,* Asst. Public Defender, *Peter Y. Macktaz,* for defendant.