STATE

v.

Joseph BENOIT.

STATE

v.

Julian ZIOBROWSKI.

Nos. 77–74–C.A., 77–282–C.A.

Supreme Court of Rhode Island.

July 22, 1980.

Reargument Denied Aug. 28, 1980.

Dennis J. Roberts, II, Atty. Gen., James H. Leavey, Sp. Asst. Atty. Gen., for plaintiff.

John A. MacFadyen, III, Asst. Public Defender, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

These are consolidated appeals from Superior Court judgments denying applications for postconviction relief filed pursuant to G.L.1956 (1969 Reenactment) § 10–9.1–1, as enacted by P.L.1974, ch. 220, § 3. The applicants were originally convicted in 1973, in the Superior Court of Providence County on charges of (1) assault with a dangerous weapon, (2) abominable and detestable crime against nature, (3) kidnapping, (4) rape, and (5) robbery.

The pertinent facts are set out in *State v. Benoit*, 117 R.I. 69, 363 A.2d 207 (1976). Before their trial in 1973, the applicants had moved to suppress certain items belonging to the victim. After having arrested the applicants, and after having impounded at the police station the vehicle towed from the scene of the arrest, the police conducted a warrantless search of the vehicle and seized the items of evidence four hours after the arrest. Relying solely on the Fourth Amendment prohibition against unreasonable searches and seizures, as made applicable against the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the applicants argued on appeal that the trial justice had erred in denying their motion to suppress the evidence. On the applicants' Fourth Amendment search-and-seizure claim, this court held that decisions of the United States Supreme Court controlled our interpretation of the extent to which the Fourth Amendment protects individuals against governmental searches and seizures. *State v. Benoit*, 117 R.I. at 75, 363 A.2d at 211–12 (1976). Our rejection of the applicants' claim was mandated by the Court's decisions in *Chambers v.*

*Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), and *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), which upheld the reasonableness of warrantless searches and seizures carried out under similar circumstances. *State v. Benoit*, 117 R.I. at 74, 363 A.2d at 211.

It is important to point out that the applicants did not raise the issue we face on this appeal—whether the warrantless search and seizure infringed rights guaranteed to citizens of this state by art. 1, sec. 6 of the Rhode Island constitution—either at the hearing on the motion to suppress, at trial, or in their brief. In fact the applicants only addressed the issue for the first time when the court raised it *sua sponte* during oral argument. In our decision on the direct appeal, we refrained from answering the state constitutional question raised at oral argument. We indicated, however, that we were "certainly free to interpret our own constitutional search and seizure provision more restrictively than the fourth amendment * * *." *State v. Benoit*, 117 R.I. at 75, 363 A.2d at 211. The applicants subsequently filed in this court a motion to reargue, which we denied without prejudice to the applicants' right to apply for postconviction relief. *State v. Benoit*, 117 R.I. 918, 364 A.2d 1290 (1976). In October 1976, the applicants filed two applications, contending that the warrantless search and seizure had violated their rights under art. I, sec. 6 of the state constitution. The relief sought was a reversal of the convictions and a new trial.

The state made a motion to dismiss the applications. The postconviction judge heard the motion to dismiss; he did not, however, rule separately on the state's motion. Rather, he incorporated his denial of the state's motion to dismiss in his decision on the merits of the applications. He then found the limitations on delayed police searches of automobiles imposed by the United States Constitution and by the Rhode Island constitution to be coextensive. In arriving at that finding, he was satisfied that this court's decision in the instant case demonstrated "no inclination to establish a

rule based on the Rhode Island Constitution which would not comport with the United States Supreme Court decisions on the Fourth Amendment." The trial justice denied both applications, and the applicants now appeal from that decision.

## I

In the first instance, we must determine whether our review of the constitutional claim is warranted in view of the applicants' failure to raise it prior to postconviction proceedings. Normally, we have required as a procedural matter that claims be raised at the trial level in order to be preserved for direct review. *See State v. Pope*, R.I., 414 A.2d 781, 786 (1980). We also recognize the principle that issues neither briefed nor argued are deemed waived. *See State v. Wright*, 105 R.I. 556, 557, 253 A.2d 593, 594 (1969); *State v. Quattrocchi*, 103 R.I. 115, 118, 235 A.2d 99, 101 (1967). Under proper circumstances, however, we have granted exceptions to our rules prohibiting review of claims not properly preserved. *See State v. Walsh*, 113 R.I. 118, 122, 318 A.2d 463, 465 (1974); *State v. Mendes*, 99 R.I. 606, 615, 210 A.2d 50, 56 (1965). In the instant case, rather than entertain the state constitutional issue on direct review or on reargument, we remitted the applicants to postconviction proceedings. *State v. Benoit*, 117 R.I. at 918, 364 A.2d at 1290.

Not all constitutional claims will be heard for the first time in postconviction proceedings. At the time of these proceedings, the test to be applied by the trial court to determine the appropriateness of hearing a federal constitutional claim raised for the first time in an application for postconviction relief was whether the applicant had deliberately bypassed the claim as a matter of trial or appellate strategy. *See Reynolds v. Langlois*, 99 R.I. 555, 559, 209 A.2d 237, 240, *cert. denied*, 382 U.S. 962, 86 S.Ct. 444, 15 L.Ed.2d 364 (1965) (quoting *Fay v. Noia*, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963)). In spite of the United States Supreme Court's rejection of the deliberate-bypass test in *Francis v.*

*Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), we reaffirmed that test in *State v. McGehearty*, R.I., 394 A.2d 1348, 1352 (1978).

Although the state pressed the argument on the applicants' failure to raise the claim at trial or on appeal, the trial justice made no express finding that the applicants either did or did not deliberately bypass the state constitutional claim. Nevertheless, because we believe that the record is not reasonably susceptible of the inference that the applicants deliberately bypassed the state constitutional claim, we need not remand for an express finding on that issue. *See State v. McGehearty*, R.I., 394 A.2d at 1352.

Our current rule on the propriety of hearing constitutional claims for the first time in postconviction proceedings also requires the Superior Court justice to find as a preliminary matter that "the record discloses that the breach complained of will constitute something more than harmless error." *State v. McGehearty*, R.I., 394 A.2d at 1352. At the time of the proceedings, a trial justice was not specifically required to make a preliminary determination on the gravity of the alleged error before determining as a substantive matter whether the trial justice had in fact committed error.

Although the trial justice was not bound to make a harmless-error determination before reaching the merits, the question remains whether we should make such a determination before proceeding to review the trial justice's ruling on the substantive constitutional claim. In our view, *McGehearty* adopted an additional procedural standard by which to regulate the cognizability of constitutional claims raised for the first time in postconviction proceedings. We see no reason to apply that procedural standard retroactively to postconviction proceedings that occurred before the *McGehearty* decision. Since the merits of the applicants' claim were ruled on below, our function now is only to review that ruling.

## II

■ Our resolution of questions of federal constitutional law is controlled by decisions of the United States Supreme Court. *Oregon v. Hass*, 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570, 576 (1975). In matters dealing with the fundamental liberties guaranteed to all citizens, the Federal Constitution establishes a minimum level of protection; however, a state constitution may be interpreted to afford greater protection to citizens of that state. *Id.* at 719, 95 S.Ct. at 1219, 43 L.Ed.2d at 576. Referring to this as a basic principle of federalism, the supreme court of California has observed that "[t]he federal Constitution was designed to guard the states as sovereignties against potential abuses of centralized government; state charters, however, were conceived as the first and at one time the only line of protection of the individual against the excesses of local officials." *People v. Brisendine*, 13 Cal.3d 528, 550, 531 P.2d 1099, 1113, 119 Cal.Rptr. 315, 329 (1975). This court recognized and applied this principle in *In re Advisory Opinion to the Senate*, 108 R.I. 628, 278 A.2d 852 (1971). Although the Supreme Court had held in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1971), that a six-man petit jury in a criminal prosecution does not violate the right to a jury trial guaranteed by the Sixth Amendment of the Federal Constitution, we held that art. I, sec. 10 and sec. 15 of the Rhode Island Constitution mandate a twelve-man jury. *In re Advisory Opinion to the Senate*, 108 R.I. at 633, 278 A.2d at 854–55.

The Court has specifically recognized the right of state courts, as final interpreters of state law, "to impose higher standards on searches and seizures than required by the Federal Constitution," even if the state constitutional provision is similar to the Fourth Amendment. *Cooper v. California*, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967). Under this explicit authorization, this court has ruled that art. I, sec. 6, "[i]n the interest of giving the full measure of protection to an individual's privacy," requires closer adherence to the provisions of our electronic eavesdropping statute than

the Fourth Amendment requires to the nearly identical federal statute. *State v. Maloof*, 114 R.I. 380, 390, 333 A.2d 676, 681 (1975).

The power and right of this court to provide Rhode Island citizens with stricter safeguards against governmental intrusions than are provided generally under the Fourth Amendment is therefore indisputable. Nevertheless, we recognize the Fourth Amendment as an indispensable guardian of fundamental rights, which in most contexts provides ample protection against unreasonable searches and seizures, and the manner in which it has been interpreted by the Court should command respect by state courts. The decision to depart from minimum standards and to increase the level of protection should be made guardedly and should be supported by a principled rationale. *See generally* Howard, *State Courts and Constitutional Rights in the Day of the Burger Court*, 62 Va.L.Rev. 873 (1976).

The applicants ask us to make such a departure. They argue that art. I, sec. 6 does not permit the sort of delayed search and seizure found to be reasonable in *Chambers v. Maroney* and *Texas v. White*, both *supra*, but requires the procurement of a warrant before the search. We agree.

We observe initially that textually the Fourth Amendment and art. I, sec. 6 are virtually identical, and in most instances we have not felt compelled to depart from the Fourth Amendment standards. In this instance, however, we believe that the rule of *Chambers v. Maroney, supra*, does not reflect a fundamental tenet built into art. I, sec. 6 and traditionally into the Fourth Amendment.

The Court has repeatedly emphasized that the Fourth Amendment "requires adherence to judicial processes," *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951), and that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-deline-

ated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967).

One of the early exceptions to the warrant requirement was recognized and delineated by the Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The Court permitted dispensing with the warrant requirement in that case because the police officers had had probable cause to search an automobile suspected of transporting illegal liquor and because it would not have been practicable to obtain a warrant before conducting an on-the-spot search of a motor vehicle, which "[could] be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153, 45 S.Ct. at 285, 69 L.Ed. at 551. The rationale underlying the *Carroll* exception, and underlying the other exceptions, is that the existence of an exigency or some other mitigating circumstance permits a police officer, rather than a judicial officer, to make a dispositive determination on the issue of probable cause to search for incriminating evidence. In these special circumstances, the societal interest in effective law enforcement takes precedence over the individual's interest in privacy, and the normal protection guaranteed by the warrant requirement need not be provided. *See Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 2590–91, 61 L.Ed.2d 235, 242 (1979); *State v. Moore,* 106 R.I. 92, 105, 256 A.2d 197, 204 (1969) (Kelleher, J., dissenting). The Court stated in *Sanders,* "we have limited the reach of each exception to that which is necessary to accommodate the identified needs of society." *Arkansas v. Sanders,* 442 U.S. at 760, 99 S.Ct. at 2591, 61 L.Ed.2d at 242.

In *Chambers v. Maroney, supra,* the Court stretched the *Carroll* exception to its outer reaches, if not beyond. The Court suggested that exigent circumstances—the mobility of the vehicle—still obtain at the station house. *Chambers v. Maroney,* 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 429. In most cases, that is a dubious proposition. The rationale of *Chambers* seems instead to be that, given the Court's premise that for constitutional purposes, there is "no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant," either course of action is reasonable. *Id.* at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428. Rather than strictly adhere to the long-recognized principle than an individual's privacy interest must give way to the societal interest in effective law enforcement only where an exigency so permits, the Court dispensed with the warrant requirement in this situation because from a practical viewpoint adherence seemed illogical.[1]

We find ourselves persuaded by Justice Harlan's dissent in *Chambers* because it adheres more closely to the guiding principle underlying art. I, sec. 6. Justice Harlan stated his belief that the *Chambers* majority's approval of warrantless, delayed searches and seizures was not "consistent with our insistence in other areas that departures from the warrant requirement strictly conform to the exigency presented." *Chambers v. Maroney,* 399 U.S. at 62–63, 90 S.Ct. at 1987, 26 L.Ed.2d at 435. (Harlan, J., dissenting). The majority had suggested that the justifiable intrusion into an indi-

---

1. The *Chambers* analysis has clearly been eroded, if not rejected by the more recent cases of *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), in which a clear distinction was drawn between a warrantless seizure of repositories of personal effects based upon probable cause and a warrantless search of such repositories after seizure had been accomplished. It is true that in the foregoing cases a distinction has purportedly been drawn between a repository of personal effects and a motor vehicle in terms of expectations of privacy and mobility; for purposes of construing the Rhode Island constitution, we are not persuaded by the distinction. We recognize that a motor vehicle is inherently mobile, while a repository of personal effects may not be. Nevertheless, once a motor vehicle has been seized, its mobility ends as effectively as in the case of a footlocker or suitcase. Therefore, the rational analysis of *Chambers* no longer has sufficient vitality for persuasive application in construing the constitution of this state.

vidual's interest in free movement and control of his vehicle occasioned by the warrantless immobilization at the station house would also justify the further, perhaps "lesser" intrusion resulting from a warrantless search. *Id.* at 51–52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428. Justice Harlan disagreed, adopting the view, as do we, that "a warrantless search involves the greater sacrifice of Fourth Amendment values." *Id.* at 63, 90 S.Ct. at 1987, 26 L.Ed.2d at 435 (Harlan, J., dissenting).

■■■ We interpret art. 1, sec. 6 to reflect the intent of the framers to declare all warrantless searches and seizures unreasonable. Only if circumstances render procurement of a warrant impracticable, and if the needs of society demand swift action, does art. I, sec. 6 permit the temporary, limited infringement of an individual's right of privacy. At the time the police searched the vehicle, it was no longer mobile and the applicants' privacy interest had regained its paramount importance. That interest should have been infringed only upon the authorization of a neutral magistrate. Our conclusion then is that the postconviction trial justice erred in his determination that art. 1, sec. 6 permitted the warrantless, delayed search and seizure.

### III

The state argues that if the search was unreasonable and the admission of the evidence was error, it was harmless error.

■■■ In addressing the harmless-error question, we note first that the error complained of violated no federal constitutional right; therefore, we are not bound by the federal harmless-error rule. *See Cooper v. California,* 386 U.S. at 62, 87 S.Ct. at 791, 17 L.Ed.2d at 734. The infringement of a state constitutional right requires us to apply our own harmless-error rule. *Chapman v. California,* 386 U.S. 18, 21, 87 S.Ct. 824, 826, 17 L.Ed.2d 705, 708–09 (1967).

■■■ The state rule requires this court to examine " 'the record with a view to determining what in our judgment would have been the probable impact of the improper evidence on the minds of the average jury. Once that judgment is made, we will assume that the objectionable evidence had a similar impact on the jury' in this case. *State v. Bower,* 109 R.I. 198, 201, 283 A.2d 39, 41 (1971) * * *. We consider admission of objectionable evidence harmless if we determine that it is not reasonably possible that such evidence would influence an average jury on the ultimate issue of guilt or innocence. *State v. Bower* * * *." *State v. Poulin,* 415 A.2d 1307 at 1311, (R.I.1980).

■■■ The complaining witness's testimony and her identifications of the applicants constituted the primary evidence hearing on the ultimate issue of guilt or innocence. The identifications were based on her observations during her long ordeal, and they represented strong, direct evidence that the applicants perpetrated the crimes charged. The applicants' counsel "had ample opportunity to cross-examine the complainant and to impeach her credibility, thereby diminishing the risk that the jury would place undue emphasis" on her pretrial and in-court identifications. *See id.,* 415 A.2d at 1311. The illegally obtained evidence constituted circumstantial evidence on the ultimate issue. In view of the strong, direct testimonial evidence adduced to establish that the applicants perpetrated the offenses charged, the physical evidence was merely cumulative. *See State v. Duffy,* 112 R.I. 276, 283, 308 A.2d 796, 800 (1973); *State v. Danahey,* 108 R.I. 291, 297, 274 A.2d 736, 739 (1971). Moreover, this evidence tended merely to corroborate certain aspects of the direct testimony of the complainant and of other witnesses. *See Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). We hold, therefore, that its admission constituted harmless error.

The applicants' appeals are denied and dismissed, the judgments appealed from are affirmed, and the cases are remanded to the Superior Court.