STATE

v.

Keith WERNER.

No. 90–470–C.A.

Supreme Court of Rhode Island.

Nov. 4, 1992.

Stephen Dambruch, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Corley, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on appeal by the state from a trial justice's decision granting the defendant's pretrial motion to suppress certain physical evidence seized from an automobile without a warrant. The state alleges that the trial justice committed error (1) by determining that the warrantless search of the automobile mandated a suppression of evidence and (2) by determining that the defendant had established sufficient standing to contest the search of the automobile. For the reasons stated herein, we reverse the trial justice's decision regarding the suppression of evidence on the merits. In reaching the merits, we assume, without deciding, that the defendant, Keith Werner, had standing to raise the issue of the validity of the search of the subject automobile.

Shortly after midnight on May 15, 1988, the West Warwick police were notified of a disturbance at a local establishment known as Johnny Ray's Bar. Upon arriving at the

scene, officers learned that two people had been shot by a male subject with what appeared to be a sawed-off shotgun. Witnesses provided the police with a description of the suspect and the vehicle he was driving, including the license-plate number. At approximately 12:30 a.m., twelve minutes after the police had first been alerted to the disturbance, officers located a 1979 Mercury Monarch matching the description and bearing the license plate of the suspect's vehicle. The Monarch was legally parked approximately one-half mile from the crime scene, and officers noticed no one in the vicinity of the car.

Sergeant Peter Appollonio arrived at the vehicle's location shortly thereafter and, after running a registration check, determined that the license plate attached to the Monarch was registered to a woman named Denina Prefontaine for an automobile listed as a 1976 Plymouth Fury. Sergeant Appollonio then approached the vehicle and observed several articles of clothing in the rear-seat compartment. From his position outside the vehicle, Sergeant Appollonio was unable to determine if anything was under the clothing. He then entered the car through the unlocked rear-passenger door and shuffled the clothing around, looking for weapons or shells. While searching the back seat with a flashlight, Sergeant Appollonio discovered a magazine and a magazine-subscription bill displaying defendant's name and a West Warwick address. Sergeant Appollonio seized both of these items and, after failing to find a weapon in the vehicle, ordered the other officers to search the surrounding neighborhood for the suspect. The officers were unable to locate the suspect at this time.

At approximately 3 a.m. police officers went to the address listed on the magazine-subscription bill, where they located defendant's sister. She informed the officers that although she did not know defendant's exact address, she believed that defendant was living somewhere on Brookside Avenue. Sometime after daybreak the police conducted a door-to-door search of Brook-

side Avenue but were unable to locate defendant. When the West Warwick prosecutor's office opened at 8 a.m., the police matched the name found on the magazine-subscription bill with a Division for Administrative Adjudication traffic violation that listed defendant's address as 14B Brookside Avenue.[1] At approximately 10 a.m. police arrested defendant at 14B Brookside Avenue and during a search of the apartment seized a shotgun, shells, and other physical evidence.

The defendant was subsequently charged with two counts of assault with intent to commit murder, one count of assault with a dangerous weapon, one count of possession of a loaded shotgun in a motor vehicle, one count of possession of a loaded shotgun, and one count of possession of a firearm after having been convicted of a crime of violence. The defendant filed a motion to suppress the evidence seized from the vehicle, claiming that the warrantless search of the car violated his rights under the Fourth Amendment to the United States Constitution and article I, section 6, of the Rhode Island Constitution. The trial justice granted defendant's motion to suppress, stating that there were no exigent circumstances that justified a warrantless search of the immobilized vehicle in police custody. The state filed a timely interlocutory appeal of the trial court's ruling, and the case is now before this forum.

The Fourth Amendment to the United States Constitution, as well as article I, section 6, of the Rhode Island Constitution, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The United States Supreme Court has used this language to establish the bright-line principle that states that searches conducted without "prior approval by judge or magistrate are *per se* unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357,

---

**1.** Effective September 1, 1992, the Division for Administrative Adjudication, commonly referred to as AAD, has been transformed into the Administrative Adjudication Court. *See* P.L. 1992, ch. 453.

88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). One of the early exceptions to the Fourth Amendment warrant requirement is the so-called automobile exception delineated by the Court in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). In *Carroll* the Court held that the warrantless search of an automobile by police officers who had probable cause to believe that the vehicle contained evidence of a crime was not unreasonable within the meaning of the Fourth Amendment. *Id.* at 153–56, 45 S.Ct. at 285–86, 69 L.Ed. at 551–52. The rationale underlying the *Carroll* exception, and all other exceptions to the warrant requirement, is the existence of some exigent circumstance that would make obtaining a warrant impracticable. Ruling that an automobile's mobility creates such an exigency, the *Carroll* Court reasoned that requiring police to obtain a warrant before searching a legally stopped automobile would hinder effective law enforcement since "the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153, 45 S.Ct. at 285, 69 L.Ed. at 551.

The Supreme Court expanded the breadth of the *Carroll* exception in *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct 1975, 26 L.Ed.2d 419 (1970). In *Chambers,* law enforcement officials impounded the defendant's automobile and later seized evidence from the vehicle during a warrantless search at the police station. The *Chambers* Court upheld the validity of this search, stating that there was no constitutional distinction between seizing a car without a warrant and a warrantless search of the vehicle conducted after impoundment. *Id.* at 52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428; *see also Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (no requirement that warrantless search of a vehicle occur contemporaneously with its lawful seizure). The Court reasoned that the existence of probable cause and exigent circumstances at the time the vehicle was stopped justified the police's making either an immediate or a delayed search of the vehicle. 399 U.S. at 51–52, 90 S.Ct. at 1981, 26 L.Ed.2d at 428.

Prior decisions of this court have evidenced our reluctance to follow the *Chambers*'s extension of the automobile exception. *See State v. Chiellini,* 557 A.2d 1195 (R.I.1989); *State v. Benoit,* 417 A.2d 895 (R.I.1980). In *Benoit,* we invalidated the warrantless search of an automobile four hours after police had lawfully seized the vehicle. We justified our departure from *Chambers* and Supreme Court precedent by exercising our right as final interpreters of state law "to impose higher standards on searches and seizures than required by the Federal Constitution." 417 A.2d at 899 (quoting *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730, 734 (1967)). We noted that although Supreme Court holdings controlled questions of federal constitutional law and established the minimum level of constitutional protection against unreasonable search and seizure, a state constitution may be interpreted to afford greater protection to citizens of that state. Although the Fourth Amendment and article I, section 6, of the Rhode Island Constitution are textually identical, we found that the *Chambers* decision did not reflect the guiding principles underlying article I, section 6. "Only if circumstances render procurement of a warrant impracticable, and if the needs of society demand swift action, does art. I, sec. 6, permit the temporary, limited infringement of an individual's right of privacy." *Benoit,* 417 A.2d at 901. Because the police had impounded the defendant's vehicle, we ruled that there were no exigent circumstances that made the obtainment of a warrant impracticable. "At the time the police searched the vehicle, it was no longer mobile and the applicants' privacy interest had regained its paramount importance. That interest should have been infringed only upon the authorization of a neutral magistrate." *Id.*

A motivating factor in our departure from *Chambers* was the apparent inconsistency in Supreme Court case law at the time we decided *Benoit.* As noted in *Benoit,* we believed that "The *Chambers* analysis has clearly been eroded, if not rejected by the more recent cases of *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct.

2476, 53 L.Ed.2d 538 (1977), and *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979)." 417 A.2d at 900 n.1. In rejecting the *Chambers* delayed-warrantless-search rule, we reviewed these two current Supreme Court decisions that justified the warrantless seizure of movable luggage or other closed containers but prohibited the police from searching such containers without a warrant. *Id.; see Arkansas v. Sanders*, 442 U.S. 753, 763–66, 99 S.Ct. 2586, 2593–94, 61 L.Ed.2d 235, 244–46 (1979) (warrantless search of suitcase after seizure from the defendant's vehicle unreasonable); *United States v. Chadwick*, 433 U.S. 1, 12–13, 97 S.Ct. 2476, 2484, 53 L.Ed.2d 538, 549–50 (1977) (warrantless search of immobilized footlocker unreasonable). The *Chadwick* and *Sanders* decisions indicated that exigency was still a requirement to warrantless searches and made it highly questionable whether *Chambers* was still viable. Analogizing these two cases to the facts of *Benoit*, we reasoned that "once a motor vehicle has been seized, its mobility ends as effectively as in the case of a footlocker or suitcase." 417 A.2d at 900 n.1.

Because the federal case law that guided our departure from *Chambers* in 1980 has since been stabilized by the Supreme Court, we now believe that it is time to revisit *Benoit* and the position we espoused in that decision. After this court decided *Benoit*, the Supreme Court handed down several decisions that, in effect, revived the doctrine of *Chambers v. Maroney*. In *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), the Court specifically undermined its reasoning in *Arkansas v. Sanders, supra*, by holding that if police officers have probable cause to search a lawfully stopped vehicle, they may conduct a warrantless search of every part of the vehicle and its contents, including all containers and packages that may conceal the object of the search. In *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam), the Court upheld the warrantless search of an automobile even though the vehicle was in police custody and a prior search had already been made. In reiterating its holding in *Chambers*, the *Thomas* Court emphasized that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized." 458 U.S. at 261, 102 S.Ct. at 3080–81, 73 L.Ed.2d at 753; *see also Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam) (warrantless search of the defendant's automobile eight hours after impoundment justified by probable cause to believe there was evidence of crime inside car). In *United States v. Johns*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), the Court upheld the warrantless search of packages three days after authorities seized them from the defendant's automobile. After reviewing *Chambers, Ross, Thomas*, and *Meyers*, the *Johns* Court stated that "[a] vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is *no requirement of exigent circumstances to justify such a warrantless search*." (Emphasis added.) 469 U.S. at 484, 105 S.Ct. at 885, 83 L.Ed.2d at 897. Finally, in *California v. Acevedo*, ___ U.S. ___, 111 S.Ct.1982, 114 L.Ed.2d 619 (1991), the Supreme Court expressly overruled the rule set forth in *Chadwick* and *Sanders*, holding that police, in a search extending only to a container located within an automobile, may search the container without a warrant in circumstances in which they have probable cause to believe that it holds contraband or evidence of a crime. The *Acevedo* Court stated that "[t]he *Chadwick–Sanders* rule not only has failed to protect privacy but it has also confused courts and police officers and impeded effective law enforcement." ___ U.S. at ___, 111 S.Ct. at 1989, 114 L.Ed.2d at 632.

■ In reviewing these post-*Benoit* decisions of the Supreme Court, we feel it is clear that exigency is no longer a requirement for the automobile exception to the Fourth Amendment. As long as the police have probable cause to believe that an automobile, or a container located therein, holds contraband or evidence of a crime, then police may conduct a warrantless search of the vehicle or container, even if

the vehicle has lost its mobility and is in police custody. As we recognized in *Benoit,* the Fourth Amendment provides ample protection against unreasonable searches and seizures, and state courts should respect the manner in which it is interpreted by the Supreme Court. 417 A.2d at 899. "The decision to depart from minimum standards [imposed by the Fourth Amendment] * * * should be made guardedly and should be supported by a principled rationale." *Id.* In *Benoit* we departed from the minimum standard of the Fourth Amendment and increased the level of protection under article I, section 6, of our State Constitution because of the great instability surrounding the exigency requirement of the automobile exception. 417 A.2d at 900 n.1. Now that the Supreme Court has dissipated the gray cloud of uncertainty that once encompassed the issue of exigency, we have decided to bring ourselves into conformity with Supreme Court precedent and the Fourth Amendment.

■ Applying this redefined standard of the automobile exception to the case at hand, we must reverse the trial justice's decision granting defendant's pretrial motion to suppress the evidence seized by the West Warwick police department. The defendant contends that the warrantless search was illegal because the car was securely in police custody and, as such, no exigency existed. This contention is without merit because, as stated above, the Supreme Court has indicated that exigency is no longer a requirement of the automobile exception. Additionally we find that Sergeant Appollonio was justified in searching the vehicle without a warrant on the basis of probable cause that the vehicle contained evidence of the shooting. As the facts indicate, eyewitnesses at the scene of the shooting supplied officers with a detailed description of the assailant's car, including the license-plate number. Within twelve minutes of learning of the incident, the police located a similar vehicle with the same license-plate number one-half mile from the crime scene. Relying on these facts, Sergeant Appollonio was correct in believing that the automobile might contain the weapon or some other evidence of the shooting. We are of the opinion, therefore, that Sergeant Appollonio was justified in entering the vehicle without a warrant to look for evidence of the crime.

The doctrine espoused today is inconsistent with our opinion in *State v. Benoit, supra,* and *State v. Chiellini, supra,* in which we relied upon *Benoit.* Although *stare decisis* serves a profoundly important purpose in our legal system, this court believes that overruling precedent is justified if the motivating purpose is to eliminate inconsistency and anomalous results. *See California v. Acevedo,* — U.S. at —, 111 S.Ct. at 1991, 114 L.Ed.2d at 633. In light of the Supreme Court's clarification of the exigency issue, we conclude that it is preferable to adopt one clear-cut rule to govern automobile searches and, in turn, eliminate the conflicting interpretations of article I, section 6, of the Rhode Island Constitution and the Fourth Amendment to the United States Constitution.

■ Although we applied the federal rule in determining the validity of the search in this case, we are compelled to point out that we would have held the search to be valid even under the rules stated in *State v. Benoit.* This court has held that "[t]he need to protect or preserve life or avoid serious injury" constitutes an exigent circumstance that justifies what would otherwise be an illegal search. *State v. Gonsalves,* 553 A.2d 1073, 1075 (R.I.1989) (quoting *State v. Jennings,* 461 A.2d 361, 366 (R.I.1983)). In the case at hand, when the officers came upon the automobile, they had probable cause to believe that the automobile might contain a dangerous weapon or evidence leading to the whereabouts of the perpetrator of a violent crime. The officers also had reason to believe that the immediate apprehension of this perpetrator might be necessary in order to prevent further violence. Thus, at the time of the search, a substantial element of exigency existed. This element of exigency should not be diluted by considering the efficiency or inefficiency with which the West Warwick police officers later pursued the evidentiary trail in apprehending the defendant. The existence or

nonexistence of exigency must be determined as of the time that the officers entered upon the search of the vehicle. Applying this analysis to the search, we conclude that the trial justice was clearly wrong in finding as a fact that no exigency existed at the time the officers decided to enter this apparently abandoned vehicle.

Consequently the state's appeal is sustained, and the judgment of the Superior Court is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.