**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alexander YOUNG, Defendant–Appellant.**

**No. 94–2113.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1994.

Decided Oct. 19, 1994.

Bradley W. Murphy, Asst. U.S. Atty. (argued), Peoria, IL, for plaintiff-appellee.

Rodney R. Nordstrom (argued), Peoria, IL, for defendant-appellant.

Before LAY,* BAUER and WOOD, Jr., Circuit Judges.

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

LAY, Circuit Judge.

Alexander Young was indicted and convicted of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). The district court[1] sentenced Young under the Sentencing Guidelines to fifty-seven months incarceration and two years supervised release. Young appeals his conviction, claiming (1) that the district court erred in denying his motion to suppress the firearm found within the motor vehicle he had been driving, and (2) that the court erred in denying his challenges to the jury array. Jurisdiction is vested in this court pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm.

*Background*

In the early morning hours of July 21, 1993, Young was driving south on I-155 in Tazewell County, Illinois, accompanied by three male passengers. At approximately 1:50 a.m., Deputy Tracy Lee Dickson of the Tazewell County Sheriff's Department stopped Young's car because it was exceeding the posted speed limit in a construction zone. Dickson took Young's license and obtained the names of the passengers. When asked, Young told Dickson that he was travelling from Peoria to Springfield to pick up his girlfriend.

Following a computer check of Young and his passengers, Dickson discovered that one passenger was wanted on a retail theft warrant and therefore arrested him. Although Dickson did not issue a ticket to Young, he asked if he could search the car after noticing that Young was unusually nervous. Young first gave his consent to the search but later withdrew it. Dickson did not search the vehicle, and Young drove off with the two remaining passengers.

While still on duty that morning, Dickson heard a radio bulletin over the Illinois State Police Emergency Radio Network (ISPERN)

that the Springfield Police were reporting that Alexander Young had just committed a home invasion and an unlawful restraint, and possibly was armed with a handgun. Furthermore, the dispatch indicated Young possibly was driving back to Peoria in a white Toyota, which was the same type of vehicle Dickson had previously stopped. Realizing he had encountered Young earlier that morning, Dickson called ISPERN and reported Young's license plate number. Shortly thereafter, Dickson observed Young's automobile. As he followed the vehicle, he noticed the two passengers in the rear seat were turning around to look at him and then turning back to look forward while carrying on a conversation. With the assistance of another deputy, Dickson pulled over the automobile. The deputies determined Young was driving the vehicle, and a third passenger was now in the front seat of the car. This passenger, who was female, had blood covering her arms and legs.[2] The deputies ordered all four people out of the car and took them into custody.

After placing Young and the others in custody, Dickson searched the vehicle's passenger compartment. He found no gun or contraband of any sort. Dickson then went back to his squad car and called for a tow truck. Thereafter, Dickson returned to Young's automobile. While surveying the vehicle, Dickson noticed that the speakers in the rear window dash had been pushed through. He estimated that the holes were approximately four to five inches wide and seven to eight inches long. He believed the holes were large enough to fit a handgun through and that they made the trunk accessible to the passengers sitting in the rear seat. Dickson then took the vehicle's keys, opened the trunk, and searched it. The search uncovered a Colt .380 handgun beneath a blanket located below the driver's side speaker hole. Dickson secured the weapon in his squad car and made another

1. The Honorable Joe B. McDade, United States District Court for the Central District of Illinois.

2. The officer who had initiated the original ISPERN dispatch testified at the suppression hearing that he had investigated the home from which Young had seized the young woman. She and Young apparently had been associated together for a number of years. According to witnesses, Young kicked in the front door of the house, entered the room where the woman and a female friend had been sleeping, and pointed a gun at them. After the woman refused to go with him, Young pistol whipped her. He then took her hostage and drove off in a white Toyota.

search, which he described as an inventory search pursuant to department policy. The later search revealed nothing.

After completing these searches, Dickson returned to his squad car, completed paperwork, and drove Young to the Tazewell County Sheriff's Department. During this time, Young told Dickson that he had gone to his girlfriend's home, been involved in a struggle with her there, and that the handgun belonged to him. Dickson claims these statements were not the result of questioning; rather, he asserts that the conversation was one-sided, and that he merely responded to Young's statements by nodding and saying "yes" and "uh-huh."

Young was later charged with possession of a firearm by a felon. Prior to trial, Young moved to quash the arrest and suppress evidence. He claimed that his arrest was without a warrant and without probable cause, and that the evidence seized in the search should be suppressed because the search was not made incident to a lawful arrest or with the consent of the defendant. Young also asserted that the court should suppress his subsequent statements because Dickson did not first give him his *Miranda* rights. The district court denied these motions.

Jury selection for Young's trial occurred on February 7, 1994. After the voir dire had begun, Young's counsel objected to the jury array because there was only one African-American on the panel. The Government responded, questioning the timeliness of this objection. The district court overruled the objection after defense counsel could not point to an unfair or unconstitutional local rule or empaneling procedure. After the jury was selected, defense counsel made a similar motion, which the district court again denied.

The jury trial went forward on February 7 and 8, 1994, and Young was found guilty of the indictment. Prior to sentencing, Young filed a written Motion for Mistrial and Stay of Proceedings. He claimed that local procedures for jury selection discriminated against minority participation because they had less access to transportation during inclement weather. Counsel also suggested that the circuit clerk failed to enforce jury duty in a proper manner, but admitted he had no evidence to support these theories. The district court denied the motion, rejecting defense counsel's arguments and request for an evidentiary hearing, and stating that the motion was untimely.

### The Validity of the Search

The district court denied the motion to suppress the firearm on three grounds: (1) Dickson had probable cause to search the automobile on the basis that the automobile contained the fruits or instrumentalities of a crime; (2) the seizure of the handgun was proper because it was discovered in a search incident to a lawful arrest; and (3) the firearm would have been discovered, inevitably, during the inventory search of the vehicle. We need only consider one of these findings. We hold that Deputy Sheriff Dickson had probable cause to search the automobile, including the trunk, for guns or contraband used in furtherance of the crime.

In *Carroll v. United States,* 267 U.S. 132, 153–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925), the Supreme Court early recognized the "automobile exception" to the warrant requirements of the Fourth Amendment. Under *Carroll,* a vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence. *Id.* A search of an automobile based on probable cause lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks. *See California v. Acevedo,* 500 U.S. 565, 570, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991); *United States v. Ross,* 456 U.S. 798, 820–24, 102 S.Ct. 2157, 2170–73, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 47–50, 90 S.Ct. 1975, 1979–1981, 26 L.Ed.2d 419 (1970). Probable cause to search exists if, given the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).

We find the district court properly concluded that Deputy Sheriff Dickson had probable cause to search the trunk of the

Young vehicle. The court determined the ISPERN dispatch stated that Young had committed an unlawful home invasion, had unlawfully seized a person, and that "possibly he was armed with a handgun." The presence of the blood-covered woman in the car, a possible victim of a home invasion and an unlawful restraint, and the fact Young was indeed heading back towards Peoria, corroborated the rest of the dispatch and strongly supported the accuracy of the entire IS-PERN bulletin. These factors, combined with the holes in the back dash and the absence of a handgun in the passenger compartment, led Deputy Sheriff Dickson to believe there was a reasonable probability the trunk contained a gun or other evidence. We deem the court's findings in this regard not clearly erroneous. *See United States v. Spears,* 965 F.2d 262, 271–72 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992) (stating that district courts' factual findings in warrantless search cases are to be reviewed under the clearly erroneous standard).

This situation is analogous to the circumstances addressed in *Chambers v. Maroney, supra.* In that case, a description of a car carrying four men along with descriptions of two armed bank robbers believed to be in the car were broadcast over the police radio. 399 U.S. at 44, 90 S.Ct. at 1977. Within an hour, a police officer stopped a car matching that description. *Id.* Four men were inside, including the petitioner who fit the description of one of the robbers. *Id.* After the four occupants were taken into custody, the police towed and then thoroughly searched the vehicle. In a concealed compartment under the dashboard, the police found two .38 caliber revolvers and other incriminating evidence. *Id.* Although the petitioner claimed

this search violated his Fourth Amendment rights, the Court held there was no such violation because the police were justified in making a warrantless automobile search. *See id.* at 52, 90 S.Ct. at 1981. Central to this holding was the Court's determination that the police had probable cause to search the entire vehicle. The court stated that "there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money." *Id.* at 47–48, 90 S.Ct. at 1979–1980.

Here, as in *Chambers,* an officer received a bulletin describing the vehicle, suspect(s), and alleged criminal activity, and indicating that the suspect(s) could be armed. In both cases, an officer stopped the vehicle in question shortly thereafter, and the circumstances observed in the vehicle corroborated most of the information in the radio dispatch. This was sufficient to convince the Court in *Chambers* that the police had probable cause to search the rest of the vehicle for weapons and contraband related to the robbery. 399 U.S. at 47–48, 90 S.Ct. at 1979–80. Thus, in this case, the radio dispatch and the confluence of corroborative facts observed by the arresting officer were likewise sufficient to support a finding that Dickson had probable cause to search Young's trunk for a gun or other evidence.[3]

The district court appropriately determined that Dickson had probable cause to search the entire automobile including the trunk. Because the requirements of the Fourth Amendment were satisfied on these grounds, we need not consider the district court's alternative bases for refusing to suppress the handgun.

---

**3.** The reasoning of a number of circuit courts in similar situations further supports today's holding. *See, e.g., United States v. Thompson,* 906 F.2d 1292, 1298 (8th Cir.), *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 540 (1990) ("We have no trouble finding probable cause to search the trunk of the vehicle for evidence of criminal activity, particularly after the search of its interior further corroborated the informant's tip that appellant and his companion were traveling to the Twin Cities to rob a bank."); *United States v. Williams,* 526 F.2d 1000, 1002 (6th Cir.1975) (finding probable cause existed to search a vehi-

cle for a weapon because the vehicle matched a detailed broadcast description, the officer saw two occupants reaching toward the floor, a shotgun shell was observed in a trash receptacle, and an apparent kidnapping victim in the car said she had been abducted at gunpoint); *United States v. Cage,* 494 F.2d 740, 742 (10th Cir.1974) (holding that patrol officers, acting on a police bulletin concerning an assault and possession of a sawed-off shotgun, had probable cause to search a car trunk because the vehicle's occupants fit the bulletin description and the officers observed a bloody towel in the car).

*Challenges to the Jury Array*

Young also contends that the district court erred in denying his motions concerning local jury procedures and the racial make-up of the jury array. He also asserts the district court erred in denying his request for an evidentiary hearing. We do not reach the merits of these claims; we find Young waived these objections by failing to raise them in a timely manner.

■ Young challenges the jury selection procedures pursuant to the "fair cross section of the community" requirement of 28 U.S.C. § 1861. Under Title 28 U.S.C. § 1867, a defendant may challenge the jury procedures as follows:

> In criminal cases, *before* the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier,* the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a) (emphasis added). This constitutes the "exclusive means by which a person accused of a Federal crime ... may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title." 28 U.S.C. § 1867(e).

Young's counsel challenged the jury array three times: he objected during voir dire, he objected again after the petit jury had been selected, and, after the trial but before sentencing, he requested an evidentiary hearing and moved for mistrial or a stay of proceedings. Counsel raised these objections either during or after the voir dire, and thus the defendant has waived his claims of noncompliance under this title. In *United States v. Grose,* this court held that a criminal defendant could not raise a statutory challenge after voir dire had begun, because "[s]uch a challenge must be made by motion *before* voir dire examination or within seven days after discovery of grounds for the motion, 'whichever is *earlier.*'" 525 F.2d 1115, 1118–19 (7th Cir.1975) (quoting 28 U.S.C. § 1867(a)), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1477, 47 L.Ed.2d 743 (1976). Here, as

in *Grose,* defense counsel waived this challenge by failing to raise his objection in a timely manner. Thus, we will not consider the merits of Young's argument on appeal.

Judgment of conviction affirmed.