**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael PATTERSON, Defendant–Appellant.**

**No. 94–3502.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1995.

Decided Aug. 22, 1995.

Timothy O'Shea (argued), Office of U.S. Atty., Madison, WI, for U.S.

Cathreen A. Godre (argued), Madison, WI, for Michael Patterson.

Before CUDAHY, COFFEY, and MANION, Circuit Judges.

COFFEY, Circuit Judge.

In June 1994, Michael Patterson was indicted for possession with the intent to distribute cocaine base (commonly known as "crack"), in violation of 21 U.S.C. § 841(a)(1), after police discovered 474.51 grams of crack hidden in his vehicle. Patterson filed a motion to suppress evidence, claiming that the police search violated the Fourth Amendment. The motion was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B), who held an evidentiary hearing. After the magistrate judge recommended denial of the suppression motion, Patterson entered a plea of guilty, reserving the right to appeal an adverse ruling by the district court on his suppression motion. After confirming Patterson's plea of guilty, the district court denied his motion to suppress and sentenced him to 150 months' imprisonment to be followed by a five-year term of supervised release. Patterson appeals. We affirm.

## I. Background

On April 21, 1994, Trooper Lawrence Brown of the Wisconsin State Patrol was on routine duty on I–94 in Dunn County, Wisconsin, and observed a black GMC Jimmy, a sports utility vehicle, pulled over on one side of the road with two people beside it. Trooper Brown stopped to investigate. One person, later identified as Elzie Johnson, stood in the ditch at the side of the road and the other, Michael Patterson, the defendant in this case, was working under the hood of the car.

Initially, Trooper Brown approached Johnson and asked him what had happened and Johnson replied that the vehicle had transmission trouble and belonged to Patterson, who was working under the hood. Trooper Brown then spoke with Patterson, who told him that he was the owner and driver of the vehicle, and that he was adding transmission fluid, and stated that they did not need a tow. Noticing a crack in the vehicle's windshield, Trooper Brown told Patterson that he would issue him a warning violation notice for the same.

Brown observed that Patterson appeared to be nervous and ill at ease, would not make eye contact, and was sweating profusely, even though the temperature was in the upper sixties. Standing by the passenger window, Trooper Brown also noticed a very strong smell of air freshener and saw a cellular phone amidst a debris of fast-food wrappers and soda cans, all of which raised Brown's suspicions as to whether Patterson might be a drug courier in transit. Brown returned to his patrol car to check out the status of Patterson's driver's license and his criminal history. A check of his driving record revealed that Patterson's license was suspended and that he had prior drug convictions. At this time, Brown requested the assistance of a drug-sniffing dog at the scene.

Brown issued Patterson a citation for driving on a suspended license and since Patterson was unable to post the bond required under the procedures of Dunn County, Wisconsin,[1] Brown took him into custody. While Patterson sat in the patrol car, Trooper Brown questioned Johnson, who stated that he had taken a bus to Chicago from Minneapolis and was getting a ride home to Minneapolis with Patterson. Trooper Brown then questioned Patterson, who contradicted Johnson and said that the two of them had driven from Minneapolis to Chicago and were returning. Shortly after this conversation, sheriff's deputies arrived with a drug-sniffing labrador retriever named Gabby.

At the suppression hearing, Gabby's handler, Deputy Frawley, testified that Gabby has a three-stage drug-sniffing reaction pro-

---

1. We note that the requirement that out-of-state drivers post bond upon arrest for a traffic violation derives authority from Wis.Stat. § 345.23 (1994).

cess. During stage I, Gabby will give an odor indication where she draws a deep breath and gets into a "scent-cone," which is the peripheral smell of drugs. During the second stage, after Gabby has honed in on the source of the scent, she will either bark or whine. At the third stage, after Gabby has targeted the specific location of the drug odor, she gets excited and scratches at the point of the cache. (Tr. II Supp. Hearing at 15). The deputy testified that at stage II the chances are "very, very high" that Gabby smells drugs and at stage III the chances are nearly 100% that she has located the odor of drugs. (Tr. II Supp. Hearing at 31–32).

Deputy Frawley approached the GMC Jimmy from the rear, downwind, and brought Gabby up to the passenger side of the vehicle. Gabby reacted strongly to the seam of the passenger door and "sniffed it hard." Deputy Frawley then cracked open the passenger door and Gabby began barking and jumping up and down; the deputy testified that then he "knew there was a lot of odor of drugs inside." (Tr. II Supp. Hearing at 40). Gabby then entered the vehicle and searched inside of it, although she could not locate the specific location of the drug odor.

At that point, Trooper Brown, believing he now had probable cause to search the vehicle, folded down the tailgate. He noticed that all the screws were missing from the factory-installed cover on the tailgate's interior. Lifting off the cover, Trooper Brown found two plastic bags containing large chunks of an off-white substance, which was later determined to be 474.51 grams of cocaine base.

Patterson was arrested and later indicted and entered a conditional plea of guilty. After his motion to suppress the evidence found in his vehicle was denied, he was sentenced. Patterson appeals.

## II. Analysis

■ We review the denial of a motion to suppress for clear error. *United States v. James,* 40 F.3d 850, 874 (7th Cir.1994); *United States v. Wilson,* 2 F.3d 226, 229 (7th

Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1615, 128 L.Ed.2d 341 (1994). *United States v. Spears,* 965 F.2d 262, 271–72 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *United States v. Robinson,* 30 F.3d 774, 781 (7th Cir.1994) (quoting *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994)).

■ The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In *Carroll v. United States,* 267 U.S. 132, 153–56, 45 S.Ct. 280, 285–86, 69 L.Ed. 543 (1925), the Supreme Court recognized the "moving vehicle" exception to the warrant requirements of the Fourth Amendment.[2] Under *Carroll,* a vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence of a crime. *California v. Acevedo,* 500 U.S. 565, 569, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991). "A search of an automobile based on probable cause lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks." *United States v. Young,* 38 F.3d 338, 340 (7th Cir.1994). Additionally, under *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

■ In Patterson's case, Trooper Brown had placed Patterson under full custodial arrest for driving with a suspended license, after Patterson had failed to post the required bond. There is no contention that this arrest was improper. Trooper Brown, therefore, was permitted to search the GMC Jimmy pursuant to the search incident to

2. The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirma-tion, and particularly describing the place to be searched, and the persons or things to be seized."

arrest doctrine. *See United States v. Fiala,* 929 F.2d 285, 288 (7th Cir.1991) (search incident to arrest for operating a vehicle without a valid license); *United States v. Hope,* 906 F.2d 254, 258 (7th Cir.1990) (search of vehicle conducted after driver arrested for driving with a suspended license), *cert. denied,* 499 U.S. 983, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991).

The factual situation in *United States v. Fiala* bears a strong resemblance to Patterson's case. In *Fiala,* an Illinois state trooper noticed a heavily loaded vehicle driving on the highway. After the vehicle veered from its lane, the trooper pulled it over and issued a warning for improper lane usage. A radio check revealed that the driver had a suspended license; the trooper called for a drug-sniffing dog. The dog alerted the troopers to the possible presence of drugs in the trunk and in a box on the backseat, and the troopers found quantities of marijuana in both locations. Although the defendants challenged the action, this court held that, under *Belton,* it was a permissible search of the vehicle. *Fiala,* 929 F.2d at 288.

Similarly, Patterson's behavior and the condition of his vehicle led Trooper Brown to suspect that he was a drug-courier. Following *Fiala,* we hold that exposing the vehicle to Gabby's drug-sniffing alert was a permissible search incident to Patterson's arrest. Although Patterson argues that Gabby should not have been let inside the car, the law is clear that pursuant to a custodial arrest, a police officer may "search the passenger compartment [as well as] ... the contents of any containers found within the passenger compartment." *Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. *Cf. United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (exposing seized luggage at an airport to a canine sniff for drugs is not a fourth amendment search requiring probable cause and a warrant because the manner of the investigative technique is limited and non-intrusive).

■ However, although Trooper Brown was permitted to search the passenger compartment of the vehicle without a warrant, the exemption does not extend to dismantling portions of the vehicle, including the tailgate's interior cover. In order to take apart the tailgate of Patterson's GMC Jimmy, the officers needed to have probable cause to believe that drugs were inside the vehicle. *See United States v. Ornelas–Ledesma,* 16 F.3d 714, 719 (7th Cir.1994) ("The seizure was lawful, therefore, only if the search yielded information that gave [the officer] probable cause to believe that contraband was secreted behind the loose panel. If so, no search warrant was required, even for a search that would require taking the car apart.").

■ Under the automobile exception of *Carroll,* 267 U.S. at 153–56, 45 S.Ct. at 285–86, all parts of a vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence. *Young,* 38 F.3d at 340. "Probable cause to search exists if, given the totality of the circumstances, there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). In Patterson's case, probable cause existed to search behind the tailgate panel. First, Trooper Brown suspected that drugs were in the car given a number of factors that in his experience indicated the existence of a drug courier: the heavy odor of air freshener, the cellular phone, Patterson's nervous disposition, and fast-food wrappers strewn around the car. *See United States v. Ferguson,* 935 F.2d 1518, 1525 (7th Cir.1991) ("[defendant] gave conflicting answers to the detective's question ... and appeared furtive, nervous, and avoided eye contact both when carrying his baggage and during a short period of general questioning."). Trooper Brown's suspicions were further aroused when Patterson and Johnson gave inconsistent stories regarding their previous travel arrangements. Finally, probable cause existed to search when Gabby alerted to the odor of drugs and the troopers noticed screws missing from the tailgate interior. *See United States v. Seals,* 987 F.2d 1102, 1107 (5th Cir.) (canine alert to cocaine-residue, "in conjunction with the defendant's nervousness and false answers, coupled with the modification of the rear seat, provided the officers with probable cause to believe that additional drugs were contained within the vehicle."), *cert. denied,* —— U.S. ——, 114 S.Ct. 155, 126

L.Ed.2d 116 (1993); *United States v. Morales–Zamora,* 914 F.2d 200, 205 (10th Cir. 1990) ("probable cause to search was supplied when the dog alerted to the vehicles.").

Finally, Patterson argues that Gabby's alert to the odor of drugs is not reliable enough to provide probable cause. However, the qualifications of both Gabby and her handler were well established at the suppression hearing. Gabby's handler, Deputy Frawley, testified that he breeds dogs for police-service work, that he has trained drug-sniffing dogs for fifteen years, and that he was chairman of the Training Committee for the State of Wisconsin for the Police Dog Handlers Association. (Tr. II Supp. Hearing at 4–5, 11). He also testified that he trained Gabby since she was one-year old and she has a 98% success rate in locating the odor of drugs in her training exercises. (Tr. II Supp. Hearing at 8, 11–12). Although Patterson points out that Deputy Frawley was not questioned regarding Gabby's precise rate of false positives, that omission does not persuade us that Gabby was unreliable and that her alert did not provide probable cause. *See* Deputy Frawley's Testimony (Tr. II Supp. Hearing at 32) ("We're right up there at the 98%. I [would] almost say if she scratches, if Gabby gets in scratches, there is a hundred percent [chance] she has the odor of drugs."). The district court did not clearly err in denying Patterson's motion to suppress the evidence obtained in the search. Because we hold that the search of Patterson's car was lawful, we need not reach the government's alternative theory under the "inevitable discovery" doctrine that the drugs would have been discovered when the car was impounded for an inventory. *See United States v. Wilson,* 938 F.2d 785, 788 (7th Cir.1991) ("Inventory searches are a well-recognized exception to the Fourth Amendment's warrant requirements."), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992).

## III. Conclusion

The judgment of the district court is AFFIRMED.