DECISION
On January 2, 2002, the State of Rhode Island ("State") charged Defendant, Darwin Arnaud, with unlawful possession of a controlled substance in violation of R.I.G.L. § 21-28-2.08 after police discovered eight ounces of crack cocaine in Defendant's automobile. Defendant filed a motion to suppress evidence, arguing that the police search violated the Fourth Amendment of the United States Constitution and Article I, section 6 of the Rhode Island Constitution.
 BACKGROUND
On November 6, 2001, Sergeant James Tiernan of the West Warwick Police Department observed a maroon Toyota execute a right turn without using a turn signal. Defendant was driving the vehicle. Sergeant Tiernan attempted to stop the vehicle by using his lights and siren, but Defendant did not respond immediately. According to Sergeant Tiernan, upon activating his overhead lights, the Defendant removed his hands from the steering wheel; bent over towards the passenger seat; and looked as though he was attempting to hide something. Defendant then brought the vehicle to a stop in the parking lot of 4 Barnes Street.
As Sergeant Tiernan approached the vehicle, he observed that Defendant's hands were shaking. Sergeant Tiernan performed a Terry[1]
pat-down which did not reveal any weapons. Following the Terry pat-down, Sergeant Tiernan commenced a search of the vehicle's interior in order to determine if a weapon was located therein. During his search of the car interior, David Bellevue, a self-professed friend of Defendant, approached Sergeant Tiernan and referred to Defendant as "Raphael." Sergeant Tiernan informed Bellevue that an investigation was in progress and suggested that Bellevue reenter his apartment. Sergeant Tiernan then inquired if Defendant's purpose was to visit Bellevue. Defendant responded affirmatively.
Following this exchange with Bellevue, Sergeant Tiernan received a dispatch from the West Warwick Police Station. Tiernan was informed that a neighbor had called the station and indicated that she was familiar with Defendant and knew him as a drug dealer named "Raphael." The neighbor informed police that Raphael kept large quantities of drugs under the hood of his vehicle.
Tiernan then returned to the vehicle and recommenced his search. On the car floor in front of the passenger's seat, Tiernan found a small, clear plastic bag containing white tan rocks which appeared to be crack cocaine. At this point, Tiernan placed Defendant under arrest; read Defendant his Miranda rights; and placed him in a police cruiser.
Once Defendant was arrested and placed in the police cruiser, Sergeant Tiernan continued his search of the car interior. His search did not reveal any weapons or additional contraband. Tiernan then called in a canine search of the automobile. Upon arriving at the scene, the dog alerted to the front quarter panel of the vehicle. Following the dog's observation, Tiernan examined the vehicle's glove compartment. Rhode Island State Trooper Jones, who by this time had arrived as back-up, observed scratches in the glove box. According to Trooper Jones, it appeared as though the screws to the glove compartment had been removed and then put back in. Using a screwdriver which he found on the front seat of Defendant's vehicle, Sergeant Tiernan removed the glove box and seized two large plastic bags of suspected crack cocaine weighing eight ounces.
At no time during the search of Defendant's vehicle or afterwards did Sergeant Tiernan or any other law enforcement official obtain a search warrant.
Defendant concedes the following for the purposes of this motion: (1) Sergeant Tiernan lawfully stopped Defendant's vehicle; (2) Sergeant Tiernan had probable cause to search Defendant's vehicle after the stop; (3) police had probable cause to bring a drug-sniffing canine to the scene; (4) the drug-sniffing canine was qualified and reliable; and (5) that the testimony anent the drug-sniffing canine would be admissible at trial.
 ISSUE
The issue before the Court appears to be a question of first impression in this jurisdiction. Were the officers required to secure a warrant prior to dismantling Defendant's glove compartment if the officers had probable cause to believe that contraband is contained in that portion of the car? The State argues that the officers had sufficient probable cause to search the vehicle.[2] "If probable cause justifies the stop of a lawfully stopped vehicle, it justifies the search of every part of thevehicle and its contents that may conceal the object of the search."Houghton, 526 U.S. at 301 (emphasis in original), (quoting, United Statesv. Ross, 456 U.S. 798, 806, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982));United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994). Defendant maintains that while law enforcement may have had probable cause to search the vehicle, law enforcement did not have probable cause to dismantle Defendant's glove compartment in order to search for narcotics. This Court disagrees. The Court finds that as long as an officer has probable cause to believe that contraband is located within a container in that part of an automobile, then a police officer may dismantle that portion of the automobile or container and seize the evidence located therein.[3]
 THE MOTION TO SUPPRESS
Defendant asseverates that the search of his automobile violated the Fourth Amendment of the United States Constitution and Article I, section 6 of the Rhode Island Constitution. According to Defendant, Sergeant Tiernan and Trooper Jones were required to obtain a search warrant prior to dismantling the interior parts of Defendant's automobile. Defendant contends that once law enforcement officials stopped the vehicle; searched the vehicle; arrested Defendant; and placed Defendant in a police cruiser, the officers should have obtained a search warrant prior to removing the glove box and searching for drugs. According to Defendant, once the initial circumstances which justify the initial warrantless search cease to exist, law enforcement officers must secure a warrant before removing interior parts of an automobile.
The State avers that the police officers properly conducted the search of Defendant's automobile. Specifically, the State contends that if the police have probable cause to believe that contraband is in an automobile or within a container in an automobile, then the police may conduct a warrantless search of the vehicle or container even if the automobile has lost its mobility and is in police custody. The State argues that Defendant's actions both prior to and after the stop provided police officers with probable cause to search the interior of the vehicle. Additionally, the State maintains that probable cause existed to search the vehicle subsequent to Defendant's arrest based on the police canine's alert to the presence of narcotics and the appearance that the glove box had been removed.
 The Automobile Exception
The Fourth Amendment of the United States Constitution and Article I, section 6 of the Rhode Island Constitution protect "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." When determining whether a particular governmental action violates these provisions, the Court utilizes traditional standards of reasonableness by assessing the intrusion upon an individual's privacy against the need for the promotion of legitimate governmental interests. Wyoming v. Houghton, 526 U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed. 408 (1999).
In general, the Fourth Amendment requires police to obtain a warrant before conducting a search. Maryland v. Dyson, 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed. 442 (1999). In Carroll v. United States,267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925), the United States Supreme Court carved out an exception to this general rule, which is now know as the "automobile exception." For the first time, the Supreme Court addressed the issue of contraband concealed in automobiles and held that "`contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant' where probable cause exists." Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed. 408 (1999) (quoting Carroll, 267 U.S. at 153).
The automobile exception does not have a separate exigency requirement. Dyson, 527 U.S. at 466-67; accord State v. Werner,615 A.2d 1010, 1013 (R.I. 1992). Where there is probable cause to search a vehicle, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained." Dyson, 527 U.S. at 466-67 (quoting United States v.Ross, 456 U.S. 798, 809, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982)).
The Rhode Island Supreme Court has rejected the application of exigency analysis to automobile searches. In State v. Werner, 615 A.2d 1010 (R.I. 1992), our Supreme Court was faced with the issue of whether a police officer needed to obtain a warrant prior to searching an immobilized car in police custody. In Werner, West Warwick police were informed of a disturbance at a local drinking establishment. Once they arrived at the scene, police learned that a male armed with a sawed-off shotgun had shot two people. Witnesses provided officers with a description of the suspect, the suspect's vehicle, and the license-plate number. Within minutes after receiving this information, police found a 1979 Mercury Monarch half a mile from the crime scene which matched the description of the suspect's vehicle and bore the same license-plate as provided by witnesses. Police ran a registration check on the license-plate and found that the plate was actually registered to another person. Officers then approached the Mercury Monarch and observed several articles of clothing in the rear-seat compartment. Officers entered the vehicle through an unlocked door and looked for evidence of weapons. Police did not uncover any weapons, but they did discover a magazine and a magazine subscription bill containing the suspect's name, Keith Werner, and his address. Officer's seized these items and drove to the stated address. Upon arriving at the address, officers spoke with the suspect's sister who stated that the suspect did not live at her address. She was able to provide police with what she believed was the suspect's current address. As a result of this information, police were able to arrest the suspect and seize a shotgun, shells, and other evidence of the crime.
Werner filed a motion to suppress arguing that the seizure of evidence from the Mercury Monarch constituted a warrantless search in violation of the Fourth Amendment. The trial justice concurred; granted Werner's motion; and found that there were no exigent circumstances which could justify the warrantless search of an immobilized vehicle in police custody.
On appeal, our Supreme Court reversed and held that as long as police have probable cause to believe that an automobile contains contraband, then police may conduct a warrantless search of the vehicle despite the fact that the vehicle has lost its mobility and is in police custody.Werner, 615 A.2d at 1013-1014. The Court stated:
 [I]t is clear that exigency is no longer a requirement for the automobile exception to the Fourth Amendment. As long as the police have probable cause to believe that an automobile, or a container located therein, holds contraband or evidence of a crime, then police may conduct a warrantless search of the vehicle or container, even if the vehicle has lost its mobility and is in police custody.
Id. In determining that exigency is no longer a requirement for the automobile exception to the Fourth Amendment, the Rhode Island Supreme Court brought this jurisdiction into conformity with United States Supreme Court precedent and the Fourth Amendment. Our State Supreme Court went to great lengths in Werner to bring the law of this jurisdiction into compliance with federal law on automobile searches. As a result, this Court finds compelling the reasoning set forth in the federal circuits. See infra. As long as probable cause exists, police may search an automobile despite the fact that there is no exigency.
In order to effectuate a search, law enforcement must have probable cause at every level of the search. United States v. Patterson, 65 F.3d 68, 71 (7th Cir. 1995); United States v. Ornelas-Ledesma, 16 F.3d 714, 719 (7th Cir. 1994) (reversed on other grounds). In order for a search to be lawful, officers need to have probable cause to believe that drugs were in that portion of the car that was to be dismantled. The seizure of contraband will be lawful "only if the search yielded information that gave [the] [o]fficer[s] probable cause to believe that contraband was secreted behind the loose panel. If so, no search warrant was required, even for a search that would require taking the car apart." Ornelas-Ledesma, 16 F.3d at 719 (citing United States v. Ross,456 U.S. 798, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982)). As mentioned supra, Defendant concedes that the police had probable cause to stop Defendant's vehicle. Defendant also concedes that Sergeant Tiernan had probable cause to search the vehicle for contraband. The instant case turns therefore on whether Sergeant Tiernan was permitted to search and dismantle the glove compartment without a warrant.
The permissible scope of a warrantless car search "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." Ross, 456 U.S. at 824. Probable cause is defined as under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Sergeant Tiernan received information from an informant via dispatch that Defendant stored narcotics under the hood of his vehicle. The informant also named Defendant as "Raphael" which corresponded with Bellevue's identification of the Defendant. After receiving this information, Sergeant Tiernan discovered cocaine in a plastic bag on the floor of Defendant's automobile.
Having found the first package of drugs, Sergeant Tiernan had probable cause to continue the search. The narcotics canine alerted to the presence of drugs in the near vicinity of the glove compartment (the front quarter panel of the car). Upon inspection by Trooper Jones, the screws securing the glove compartment appeared to have been removed several times and reinserted. See United States v. Patterson, 65 F.3d 68, 71 (7th Cir. 1995) (scraped and missing screws, along with other supporting indicia, may support finding of probable cause to remove automobile panel) (reversed on other grounds). Thus, the officers had probable cause to believe that narcotics were hidden behind the glove compartment.Ornelas v. United States, 517 U.S. 690, 700, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 921 (1996).
Under the automobile exception, law enforcement officials may dismantle the dashboard of an automobile in police custody whenever probable cause exists. In United States v. Sample, 136 F.3d 562, 564 (8th Cir. 1998), police officers attempted to stop Sample for reckless driving. Initially, Sample refused to stop which led to a police pursuit. During the chase, police ran a computer check on the license-plates attached to Sample's vehicle and discovered they belonged to another vehicle. Sample then suddenly stopped the car. Officers removed the car's occupants, including Sample, and placed them in the patrol car. During the removal of the occupants, an officer noticed 9 gun ammunition on the floor of the automobile. Looking further, the officer found two handgun ammunition clips. Based on this discovery, the officer continued searching the passenger compartment and observed money protruding from vents in the dashboard. The officer also noticed that the dashboard appeared to have been previously removed. The officer removed the front of the dashboard compartment and discovered a large sum of money and two handguns.
On appeal, the Eighth Circuit Court of Appeals affirmed the trial court's denial of Sample's motion to suppress. The Eighth Circuit held that under the automobile exception, "police officers may conduct a warrantless search of a vehicle and containers within the vehicle whenever probable cause exists" despite the lack of exigent circumstances. Sample, 136 F.3d at 564. The Court reasoned that when the totality of the circumstances were considered, i.e. Sample's failure to stop, the ammunition and clips on the floorboard, the money in the vents, and the configuration of the dashboard, "there was a fair probability that guns, or other contraband or evidence of a crime, would be found in the dashboard compartment, and therefore probable cause existed for the search." Id.
In United States v. Patterson, 65 F.3d 68 (7th Cir. 1995) (reversed on other grounds), a police officer observed a GMC Jimmy, a sports utility vehicle, pulled over on the side of the road. The police officer stopped his vehicle and inquired as to whether the travelers required assistance. Patterson identified himself as the owner of the vehicle and stated that the vehicle experienced transmission trouble but that he did not require the assistance of a tow truck. During this exchange, the police officer noticed a crack in the vehicle's windshield. As a result, the officer told Patterson that he would issue a warning violation. According to the police officer, Patterson appeared nervous and ill at ease. Patterson refused to make eye contact with the officer and was sweating. While standing near the car, the police officer observed fast-food wrappers and a cellular phone in the automobile. The police officer also noticed a very strong air freshener odor. This indicia provoked the officer's suspicion that Patterson was transporting drugs. The officer ran a check on Patterson's license and criminal history which revealed prior drug convictions. At this time, the police officer ordered the assistance of a drug-sniffing dog at the scene.
The drug-sniffing canine alerted to the presence of drugs inside the Patterson automobile. Following the canine alert, the police officer unfolded the tailgate on the GMC Jimmy. The officer observed that the screws securing the cover to the inside of the tailgate had been removed. The police officer removed the cover of the tailgate and discovered 474.51 grams of cocaine.
The Seventh Circuit Court of Appeals affirmed the denial of Patterson's motion to suppress and held that the seizure was lawful even without a warrant because the police officer has sufficient probable cause to believe that the contraband was secreted behind the panel of the GMC.Patterson, 65 F.3d at 71. Under the automobile exception, armed with such probable cause, the police officer could search behind the tailgate panel. Id.
Likewise in United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996), the Fourth Circuit Court of Appeals found that after officers observed a large bundle of money, two cellular telephones, a beeper, and a fully loaded 15-round, 9 millimeter clip of "Black Talon" ammunition, police had sufficient probable cause under the automobile exception to cut open the door to a secret compartment located behind the rear seat.
The same result was reached in Illinois v. Gonzalez, 316 Ill. App.3d 354, 363, 736 N.E.2d 157, 164 (2000). The Appellate Court of Illinois found that under the totality of the circumstances probable cause existed to activate an electronic secret trap in rear seat. See also Project,Vehicle Searches, 88 Geo. L.J. 958 (2000).
Consequently, this Court finds that Officer Tiernan had sufficient probable cause to dismantle the glove compartment. Under the automobile exception and the above cited case law, Officer Tiernan was not required to obtain a search warrant prior to removing the glove compartment. Therefore, his actions did not constitute an illegal search.
 CONCLUSION
Since the police officers had sufficient probable cause to believe that narcotics were contained behind the glove compartment, police officers were authorized under the automobile exception to dismantle the compartment without a warrant. Accordingly, Defendant's motion to suppress is denied.
[1] See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968) (permitting an officer to carefully explore the outer surfaces of a person's clothing in an attempt to find a weapon during an investigatory stop.)
[2] The State did not argue inevitable discovery of the contraband through an inventory search. However, such a discovery would have to have been consistent with internal police procedures regarding inventory searches. See State v. Bonin, 591 A.2d 38, 39 (R.I. 1991).
[3] It is this Court's opinion that the better practice would be to bring the automobile to the police station and obtain a search warrant. But it appears from a review of the cases thus far, that where there is probable cause to believe that contraband is within that portion of the automobile, the police are allowed to dismantle that portion of the car to seize the contraband without a search warrant.